**Ricky PERKINS, Plaintiff–Appellant,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant–Appellee.**

**No. 00–5801.**

United States Court of Appeals, Sixth Circuit.

July 17, 2001.

Before SILER and GILMAN, Circuit Judges, and DONALD, District Judge.*

OPINION

DONALD, District Judge.

Ricky L. Perkins ("Perkins") applied for and was denied disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act ("SSA"). Perkins seeks a remand pursuant to sentence six of 42 U.S.C. § 405(g) based on new and material evidence. The district court affirmed the decision by the Administrative Law Judge ("ALJ") denying all benefits to Perkins. In his appeal to this court, Perkins contends that the new evidence submitted to the Commissioner's Appeals Council meets the statutory requirements for sentence six remand and that the District Court's rationale for denying sentence six remand was legally erroneous. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

A. Medical History

At the time of his application, Perkins was thirty seven years old and had an eleventh grade education. (TR 89, 111; TR Findings 7, 8). He could no longer perform his past work as a carpenter. (TR 111, TR 30, Finding 6). Perkins alleged that he could no longer work due to

---

* The Honorable Bernice Bouie Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

deterioration of his right knee and two degenerative discs in his lower back. (TR 107).

Medical evidence available to the ALJ shows that Perkins's treating general practice physician, Dr. Joel Perkerson ("Dr.Perkerson"), saw Perkins on June 5, 1996, "basically because he wanted to apply for disability." (TR 276). At that time, Dr. Perkerson noted that Perkins appeared to suffer from some fairly significant problems, but did not know if he should apply for disability. (TR 276). On June 19, 1996, Perkins's back was "subjectively tender." (TR 275). A June 26, 1996 MRI showed degenerative disc disease at L4–5 and prominent posterior bulging annulus fibrosis, or more likely a small ligamentous herniation of nuclear material. (TR 277). Dr. Perkerson referred Perkins to a specialist. (TR 275).

Perkins complained of pain and swelling in his right knee on July 14, 1996. (TR 144). The x-rays showed marked degenerative changes predominantly involving the lateral compartment and large joint effusion, but no definite bone abnormality. (TR 148). Neurosurgeon William Reid. ("Dr. Reid") examined Perkins on July 17, 1996 for his complaints of pain in his right knee and lower back. (TR 150). An MRI of Perkins's back showed mild degenerative changes at the L4–5 level with a mild degree of facet hypertrophy and lateral recess stenosis. (TR 150). It was Dr. Reid's opinion that the MRI did not show any significant stenosis or herniation. (TR 150). Dr. Reid told Perkins there was no need for surgery and suggested physical therapy and non-narcotic analgesics for pain control. (TR 151).

Dr. Stephen Natelson ("Dr. Natelson"), also a neurosurgeon, examined Perkins on July 24, 1996. (TR 158). Dr. Natelson's clinical examination revealed that both of Perkins's knees looked extremely arthritic and had a diminished range of motion.

(TR 158). Perkins's right calf was about three centimeters smaller than the left. (TR 158). Rotation of Perkins's right hip was painful. (TR 158). Perkins's sensory and motor function and his reflexes and coordination were normal. (TR 158). Dr. Natelson reviewed the MRI and noted that it "allegedly" showed spinal stenosis, but he could not confirm this diagnosis. (TR 158). Dr. Natelson recommended a myelogram, bone scan, and x-rays. (TR 159). He did not give Perkins any medication. (TR 159).

The x-rays Dr. Natelson ordered showed that neither of Perkins's hips were fractured. (TR 160–161). There was no acute bony destruction and the joint space was maintained. (TR 160–161). A CT scan of Perkins's lumbar spine showed mild degenerative changes in the facet joints at L4–5 and L5–S1. (TR 162). There was no disc herniation. (TR 162). A CT scan of Perkins's cervical spine showed focal left vertebral spur and left paracentral disc protrusion at C4–5. (TR 163). It was Dr. Natelson's opinion that the lumbar myelogram was essentially normal and the cervical myelogram showed some spondylosis with a bulge at C4–5. (TR 168).

Dr. Natelson examined Perkins on August 5, 1996 when he complained of pain in his left arm. (TR 168). Dr. Natelson ordered an MRI to investigate the problem. (TR 168). The MRI was normal. (TR 167, 180). An August 14, 1996 myelogram showed an epidural defect at C4–5 which may have increased in severity since the previous study. (TR 182). A post-myelogram CT scan showed some mild degenerative change at C5–6 but was otherwise unremarkable. (TR 183).

When Perkins returned to Dr. Natelson on September 4, 1996, Perkins was using his left arm "for everything." (TR 166). His reflexes and strength were normal. (TR 166).

Perkins visited the emergency room on September 23, 1996, complaining that he was out of pain medication and his doctor was out of town. (TR 199). Dr. Natelson examined Perkins on October 9, 1996 and noted that he was using his arm normally. (TR 291). Dr. Natelson noted that Perkins continued to complain about how much pain he experienced, but Dr. Natelson thought that was "just his personality." (TR 291). Dr. Natelson was to see Perkins only on an as-needed basis. (TR 291).

Dr. Natelson saw Perkins again on January 6, 1997, and noted that Perkins told him his neck and arm were better. (TR 291). Perkins complained of low back pain without any significant radiation. (TR 291). Dr. Natelson ordered an MRI, but noted that the neurological examination was unremarkable. (TR 291). The MRI showed a slight bulge at L4–5, but was otherwise normal. (TR 299). Dr. Natelson recommended that Perkins be gradually removed from his pain medication. (TR 291). Additionally, Dr. Natelson ordered a series of physical therapy treatments, but Perkins refused to cooperate. (TR 234).

Perkins's medical history constitutes the focal point of his appeal from the denial of Social Security benefits. The record reveals that Dr. Paul Gurecki ("Dr. Gurecki") had treated Perkins for seizures, but did not see any indication that Perkins was disabled from that well-controlled problem as long as he did not work in extremely dangerous places or with extremely dangerous equipment. (TR 244). Dr. Gurecki also treated Perkins for migraine or muscle contraction headaches but, again, did not find them disabling. (TR 244). Dr. Gurecki summarized that, from a neurological standpoint, he did not find any indication "for a total and permanent disability of any sort in [Perkins]." (TR 245).

Dr. McMahon examined Perkins on July 11, 1997, and made the following observations: "[He] is doing excellent with the right knee. He is having no real pain at all. He is very pleased with how he is doing. His knee is very stable. He has a good range of motion." (TR 299). Dr. McMahon released Perkins from his care without suggesting any limitations. (TR 299).

State Agency Medical Consultant Mona Mishu reviewed the medical evidence on December 16, 1996, and was of the opinion Perkins could perform a reduced range of light work. (TR 217–224).[1] Dr. Mishu considered the fact that Perkins had arthritis and had undergone a total replacement of his right knee in October 1996. (TR 218).

The ALJ considered the evidence of record and found that Perkins had the residual functional capacity to perform sedentary work[2] with a sit/stand option. (TR 30,

---

1. Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, the individual must have the ability to do substantially all these activities. If someone can do light work, the Commissioner determines that person can do sedentary work, unless there are additional limiting factors. 20 C.F.R. §§ 404.1567(b), 416.967(b) (1999).

2. Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary to carry out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567, 416.967(b) (1999).

Finding 5). The ALJ also found that Perkins was unable to perform frequent postural activities, to reach or grasp heavy objects with his left hand, or to work at unprotected heights or around moving machinery, and had a limited but satisfactory ability to use judgment, deal with job stresses, maintain attention and concentration, demonstrate reliability, and understand, remember, and carry out detailed or complex job instructions. (TR 30, Finding 5).

Nearly one year after the ALJ issued his September 22, 1997 decision, Perkins submitted evidence directly to the Appeals Council. (TR 13–14, 316–36). This evidence included medical records from Dr. Bertram Henry covering the period between February 17, 1998 through July 23, 1998, and a letter and functional assessment from Dr. Perkerson dated June 3, 1998. (TR 316–36). The Appeals Council considered this post-decision evidence and concluded that the additional evidence did not provide a basis for altering the ALJ's decision. (TR 10). The Appeals Council denied Perkins's request for review. (TR 10).

Perkins brought an appeal in District Court under 42 U.S.C. § 405(g), and brings this appeal to this Court under 28 U.S.C. § 1291. The Magistrate Judge issued a Report and Recommendation to grant Defendant's motion for summary judgment. The Magistrate Judge found that the Commissioner had the benefit of Dr. Perkerson's opinion of disability at the time of the ALJ decision, properly rejected it, and could "not find anything in Dr. Perkerson's new assessment that would persuade the ALJ/Commissioner to give it any more weight than was previously given." Consequently, the Magistrate Judge found the Dr. Perkerson medical assessment form not material, and denied remand. R & R at 15.

Perkins objected to the Magistrate Judge's Report and Recommendation, arguing only that the post-decision evidence warranted a sentence six remand. R. 18: Objections. The District Judge considered Perkins's argument but agreed with the magistrate judge. R. 19: Memorandum and Order at 2. Consequently, the District Court affirmed the Commissioner's decision that Perkins was not disabled and denied Perkins's request to remand the case pursuant to sentence six of 42 U.S.C. § 405(g). *Id.*

## B. Procedural History

Perkins filed applications for a period of disability, DIB, and SSI on July 17, 1996, claiming a disability onset date beginning May 15, 1996. (TR 89–92, 302–304). After initial and reconsideration denials, (TR 71–76, 79–80, 306–311, 314–315), a hearing was held before an ALJ on September 10, 1997. (TR 42–64). This hearing resulted in a September 22, 1997 decision unfavorable to Perkins. (TR 20–31). Perkins requested administrative review and submitted evidence to the Appeals Council that was not available to the ALJ. (TR 12–14). The Appeals Council considered the post-decision evidence but concluded that it did not provide a basis for changing the ALJ's decision. (TR 10–11). The Appeals Council declined to review the case, and the ALJ's decision became the final decision of the Commissioner. (TR 10–11).

Perkins appealed to the District Court and sought judicial review of the Commissioner's final decision. R. 1: Complaint. The matter was referred to United States Magistrate Judge Robert P. Murrian, who considered the evidence and the parties' arguments, and on March 27, 2000 issued a Report and Recommendation finding the Commissioner's decision was supported by substantial evidence. R. 17: Report and Recommendation. Perkins objected to the

Magistrate Judge's Report and Recommendation, arguing only that evidence not available to the ALJ, specifically, a letter and medical assessment from Perkins's treating physician and treatment notes from Baptist Hospital of East Tennessee, was new and material, and warranted a remand pursuant to sentence six of 42 U.S.C. § 405(g). R. 18, R. 19. On April 26, 2000, the District Judge affirmed the Commissioner's decision finding that Perkins was not disabled. *Id.*

## II. ANALYSIS

### A. Standard of review

Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive so long as they are supported by substantial evidence. This court's review "is limited to determining whether there is substantial evidence in the record to support the findings." *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 851 (6th Cir.1986). " 'Substantial evidence' means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Kirk v. Sec'y of Health and Human Servs.,* 667 F.2d 524, 535 (6th Cir.1981) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, this Court must defer to an agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

It is not the role of this Court to resolve conflicting evidence in the record or to examine the credibility of the appellant's testimony. *See Gaffney v. Bowen,* 825 F.2d 98, 100 (6th Cir.1987) (per curiam). This Court's inquiry instead focuses on whether substantial evidence supports the Commissioner's failure to find claimant disabled and therefore eligible for SSI benefits.

### B. Legal framework for disability claims

A person is considered disabled under the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Furthermore,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden lies with the claimant to prove that he is disabled. *See Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1233 (6th Cir.1993); *see also* 20 C.F.R. § 416.912(a).

The regulations outline a five-step analysis for evaluating disability claims. 20 C.F.R. § 404.1520. Under the fourth step, the Commissioner determines whether a claimant is capable of performing past relevant work. This step provides as follows:

> If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still

do this kind of work, we will find that you are not disabled.

20 C.F.R. § 404.1520(e).

C. The United States District Judge did not abuse his discretion when he found that evidence not before the ALJ was not new and material and accordingly did not warrant remand pursuant to the sentence six of 42 U.S.C. § 405(g)[3]

Perkins contends that medical reports and opinions presented to the Appeals Council on September 9, 1998, nearly one year after the ALJ made his decision, warrant remand. Specifically, Perkins argues that a letter and a functional assessment written by Dr. Perkerson, both dated June 3, 1998, probably would have changed the ALJ's September 22, 1997 decision if the ALJ had seen them. For the reasons set forth herein, Perkins's argument must fail.

Evidence which was not available to the ALJ cannot be considered by the court in its substantial evidence review, but may be considered only as a possible basis for remand under sentence six of 42 U.S.C. § 405(g).[4] *See Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir.1996); *Cotton v. Sullivan*, 2 F.3d 692, 695–696 (6th Cir.1993); 20 C.F.R. §§ 404.955, 416.1455 (1999). A remand is possible only if Perkins demonstrates that the evidence is new and material, and that good cause exists for his failure to introduce the evidence at the administrative level. *See Willis v. Secy. of Health and Human Servs.*, 727 F.2d 551, 553 (6th Cir.1984). The party seeking remand bears the burden of showing it is proper. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir.1988); *Oliver v. Sec'y of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986). In this case, Perkins has not met this burden.

Perkins has not demonstrated good cause for his failure to introduce Dr. Perkerson's report and assessment in a timely manner. *Oliver*, 804 F.2d at 966.[5] The mere fact that the evidence at issue was not created until nine months after the ALJ's decision and was not submitted to the Appeals Council until nearly a year after the ALJ's decision does not establish good cause. This Court takes a harder line: Perkins must establish good cause for his failure to obtain the evidence prior to the hearing. *Id.* Perkins attempts, unsuccessfully, to blame Dr. Perkerson for his failure to provide the evidence in a

3. The district court's decision that substantial evidence supported the Commissioner's decision that Plaintiff was not disabled is not at issue.

4. The sixth sentence of 42 U.S.C. § 405(g) reads:

The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

5. The magistrate judge did not consider the "good cause" prong of sentence six. Instead, he assumed "for the purpose of the plaintiff's motion that he has established good cause for his failing to submit the records at issue ..." and found that the post-decision evidence was not "material." R. 17: Report and Recommendation at 15.

timely fashion. (*See* Appellant's Brief, at 13–14).

Perkins further asserts that his attorney asked Dr. Perkerson to provide an assessment seven months prior to the hearing and left the decision to Dr. Perkerson after making the request. (*See* Appellant's Brief, at 13). Dr. Perkerson, however, did not have any interest in the outcome of this case. Perkins is responsible for providing evidence to establish his disability. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1512(a), 416.912(a)(1999); *See McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir.1995). Perkins's attorney reviewed the evidence available at the hearing and did not suggest that additional information was expected from Dr. Perkerson or that such information was necessary to the adjudication of Perkins's disability claim. (TR 44–45).

Perkins argues that if Dr. Perkerson did not voluntarily complete an assessment by the time of the ALJ hearing "there was no other way to obtain one." (*See* Appellant's Brief, at 15). Actually, when it is reasonably necessary for the full presentation of a case, an ALJ can subpoena the appearance of a witness. 20 C.F.R. §§ 404.950(d), 416.1450(d) (1999); *See Calvin v. Chater*, 73 F.3d 87, 89 (6th Cir.1996). The ALJ found there was adequate information in the record, including Dr. Perkerson's discounted opinion, and did not find it necessary for the Commissioner to request additional information. Perkins, however, was free to inform the ALJ that Dr. Perkerson was not responsive to his plea for an assessment and request a subpoena for his appearance and failed to do so. Thus, Perkins has not established "good cause" and remand is precluded.

Moreover, even if good cause existed for his failure to introduce Dr. Perkerson's report and assessment earlier, Perkins has not proven the report material. To show materiality, Perkins must demonstrate a reasonable probability that the Commissioner would have decided the case differently had the evidence been considered. *Sizemore*, 865 F.2d at 711. It is not reasonable to believe Dr. Perkerson's June 1998 post-decision report and assessment would have changed the Commissioner's decision as to Perkins's disability status.

Dr. Perkerson's post-decision report and assessment suffers the same flaw that diminished the importance of his earlier opinions, specifically, that it is not supported by his own treatment notes and is inconsistent with the record as a whole. The record shows that the ALJ considered Dr. Perkerson's earlier opinions suggesting that Perkins was disabled and found them not supported by Dr. Perkerson's own treatment notes and inconsistent with the other medical evidence showing that Perkins had recovered substantially from his neck and right knee surgeries. (TR 27–28). The Magistrate Judge found that the ALJ had correctly discounted Dr. Perkerson's earlier opinion that Plaintiff was "probably" disabled because Dr. Perkerson's "opinion is not supported by objective medical evidence or the opinions of the specialists to whom he referred the plaintiff for treatment of his complaints." R. 19: Report and Recommendation at 10–11.

In his June 1998 post-decision report and assessment, Dr. Perkerson continues to rely on objective evidence that was in the record properly before the ALJ, evidence that actually supports the ALJ's decision that Perkins was not disabled. In suggesting Perkins is disabled, Dr. Perkerson relies on a January 1997 MRI, a July 1996 myelogram,[6] an August 1996

---

6. Dr. Perkerson's letter cites to a "myelogram of the cervical region ... performed 7–97 at Fort Sanders Regional Medical Center." (TR 332). The Commissioner suggests this is a typographical error and refers to the July 30, 1996 myelogram performed at the Fort Sanders Medical Center (TR 165).

myelogram, and July 1996 and July 1997 CT scans. (TR 332–333). Those objective studies, however, were all considered by medical specialists, none of whom concluded Plaintiff was unable to work.

For instance, Dr. Natelson reviewed the January 1997 MRI and found that it showed only a slight bulge at L4–5 and was otherwise normal (TR 299). As Dr. Perkerson himself noted, the July 1996 myelogram was normal. (TR 332, 165). It was Dr. Natelson's opinion that the July 1996 lumbar myelogram was essentially normal and the cervical myelogram showed only some spondylosis with a bulge at C4–5. (TR 168). Dr. Natelson thought the August 1996 myelogram showed an epidural defect at C4–5 which may have increased in severity since the previous study, but the post-myelogram CT scan showed only some mild degenerative change at C5–6 and was otherwise unremarkable. (TR 182–83).

Moreover, Dr. Perkerson's post-decision report and assessment deal only with Perkins's "current" condition as of June 1998. (TR 332). Dr. Perkerson lists Perkins's "current diagnosis"; lists his "current medications"; and opines that Perkins "is impaired." (TR 332). Dr. Perkerson does not attempt to relate his opinion back to the period prior to the ALJ's September 1997 decision, the time period relevant to this adjudication. Even if the limitations suggested by Dr. Perkerson were supported by the record, this post-decision evidence cannot be considered "material" because it does not relate to the period under adjudication. *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir.1993). Remand is not warranted. The district court did not abuse its discretion in deciding not to remand this case.

Perkins further argues that, because the post-decision evidence contains a list of specific functional limitations, the court

should have applied a different standard in considering whether remand was appropriate. (*See* Appellant's Brief at 17–19). Perkins's argument is without merit.

Perkins asserts that the ALJ discounted Dr. Perkerson's earlier opinion because it did not contain any specific limitations and was merely conclusory. *Id.* While Perkins is correct in stating that the ALJ could have discounted Dr. Perkerson's earlier opinion because it made a legal conclusion reserved to the Commissioner, 20 C.F.R. §§ 404.1527, 416.927(e)(1999); *Hardaway v. Sec'y of Health and Human Servs.*, 823 F.2d 922, 927 (6th Cir.1987), the ALJ explained that he did not assign great weight to Dr. Perkerson's opinion that Perkins "probably" could not perform gainful activity because:

> [Perkerson's] subsequent accounts of symptomatic pain, sleep, and mood improvement with monitored medication therapy, and his consideration of resumption of physical therapy, appear to counter his tentative determination of "disability" in February 1997.

(TR 27).

> The ALJ pointed out that "[i]t appears, rather, that [Perkins] recovered substantially from his neck and right knee surgeries in 1996, such that neither caused disabling limitations for a continuous period of not less than twelve months thereafter." (TR 28). The ALJ clearly discounted Dr. Perkerson's opinion because it was not supported by the evidence of record, not merely because it failed to suggest any specific functional limitations.

While Dr. Perkerson's earlier opinion did not suggest any specific functional limitations, there can be no doubt that both the ALJ and the Magistrate Judge understood that Dr. Perkerson thought Perkins was disabled. Perkins's belief that the Magistrate Judge should have somehow

viewed Dr. Perkerson's post-decision assessment differently because it suggested specific limitations is not supported by any statute, regulation, or authoritative case-law. Dr. Perkerson's post-decision assessment relied on objective medical evidence that did not support his opinion and was inconsistent with the record as a whole.

The ALJ undoubtedly would have discounted Dr. Perkerson's June 1998 assessment if it had been before him. Even a treating physician's opinion must be supported by "sufficient clinical findings and [be] consistent with the evidence." *See Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 287 (6th Cir.1994); Social Security Ruling 96–2p (1996) (noting that a treating source's opinion is not entitled to controlling weight if it is "not well-supported by medically acceptable clinical and laboratory diagnostic techniques or it is inconsistent with the other substantial evidence in the case record").[7] Consequently, there is no reason to believe that Dr. Perkerson's post-decision opinion would probably alter the Commissioner's decision simply because it contained a list of specific limitations.

## VI. CONCLUSION

For all the reasons set forth above, we AFFIRM the judgment of the District Court.

---

7. The ALJ relied, in part, on a functional capacity assessment provided by State Agency Medical Consultant Mona Mishu. (TR 27). The ALJ was required to rely on the State Agency Medical Consultant's opinion where, as in this case, there are no assessments from examining doctors. *See Fletcher v. Commissioner of Soc. Sec.*, No. 99–5902 (2000 WL 687658 (6th Cir. May 19, 2000)) (Commissioner's Exh. 1).