NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0101n.06
Filed: February 8, 2007

No. 06-5545

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

TIMOTHY C. TEMPLETON,

    Plaintiff-Appellant,

       v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant-Appellee.

On Appeal from the United
States District Court for the
Eastern District of Tennessee

_____/

**Before:**     **GUY, SUHRHEINRICH, and GRIFFIN, Circuit Judges.**

    **PER CURIAM.**     Plaintiff Timothy C. Templeton appeals from the district court's order affirming the denial of his application for social security disability benefits. First, seeking reversal, Templeton contends that there was not substantial evidence to support the ALJ's conclusion that he retained the capacity to perform unskilled light work that allowed for frequent postural changes. Second, Templeton argues that the district court erred by refusing to remand his claim for consideration of new evidence concerning his residual functional capacity. For the reasons that follow, we affirm in all respects.

**I.**

    Templeton applied for disability insurance benefits alleging that his disability began on May 30, 2003, after he injured his back at work. Templeton, who completed high school,

had past relevant work experience as a shipper and a crane operator. His prior relevant work required heavy exertion, which it is undisputed he could no longer perform. Plaintiff maintained that he was disabled due to a herniated disc at L5-S1 and constant pain in his lower back radiating down both legs. His application was denied initially and on reconsideration, and a hearing was held before an ALJ on February 3, 2005.

In a written decision issued April 11, 2005, the ALJ found that plaintiff had demonstrated a severe impairment that was expected to last more than 12 months which would preclude him from performing his past relevant work. The ALJ also concluded, however, that Templeton retained the capacity to perform simple, unskilled, light work that allowed for frequent postural changes. Relying on the vocational expert's testimony that a significant number of such jobs existed in the national economy, the ALJ concluded that plaintiff was not disabled under the Social Security Act. Plaintiff submitted additional evidence with his request for review by the Appeals Council. The Appeals Council denied review on June 30, 2005, and the ALJ's decision became the final agency action.

Plaintiff brought this action seeking judicial review of the denial of benefits, and cross-motions for summary judgment were filed. The district court granted summary judgment to the Commissioner on March 9, 2006, finding that substantial evidence supported the ALJ's decision and denying the request for remand under sentence six of 42 U.S.C. § 405(g). Plaintiff filed a motion to alter or amend judgment, which was also denied, and this appeal followed.

**II.**

A five-step sequential process is used to determine whether a claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 404.1520; *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).[1] The claimant bears the burden of proof on steps one through four, and then the burden shifts to the Commissioner to establish that there are a significant number of jobs in the national economy that the claimant can perform. *Warner*, 375 F.3d at 390. In this case, the ALJ acting for the Commissioner found in plaintiff's favor on each of the first four steps, but concluded at the fifth and final step that there was work Templeton could perform and denied his application for benefits.

"This court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also* 42 U.S.C. § 405(g). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). In reviewing the

---

[1]The claimant must first demonstrate that he is not engaged in any "substantial gainful activity" at the time he seeks disability benefits, and then that he suffers from a "severe impairment" that "significantly limits . . . physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(b) and (c) and § 416.920(c). Third, if the claimant's severe impairment is expected to last for at least 12 months and the impairment "meets or equals a listed impairment," he is presumed to be disabled. 20 C.F.R. § 404.1520(d) and § 416.920(d). Fourth, if the impairment does not meet or equal a listed impairment and does not prevent the claimant from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). If he cannot perform past relevant work, other factors are considered at the fifth and final step including age, education, work experience, and residual functional capacity, to determine whether the claimant can make an adjustment to other work. 20 C.F.R. § 404.1520(f) and § 404.1545. If he can, he is not disabled under the Social Security Act.

Commissioner's conclusions, we may not resolve conflicts in the evidence or decide questions of credibility. *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987). Even if substantial evidence would have supported the opposite conclusion, the Commissioner's findings must be affirmed if supported by substantial evidence. *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

**A.      Evidence**

Plaintiff was diagnosed and treated by neurosurgeon John Raff, M.D., for a herniated disc at L5-S1 and pain in the low back and legs between May 2003 and January 2004. Surgery was rejected as a treatment option given the risk of a poor outcome due in part to the fact he weighed over 300 pounds. Plaintiff received physical therapy and underwent several spinal injections, but neither resolved his complaints. The doctor who administered the injections, Timothy Smyth, M.D., of Pain Medicine Associates, diagnosed plaintiff as having lumbar spondylosis without myelopathy, mild lumbar degenerative disc disease, and mild lumbar herniated nucleus pulposus. Plaintiff's primary care doctors, first Dr. John Ille and later Dr. Mark Dalle-Ave, also treated plaintiff for hypertension, low back pain, neuropathy, depression, anxiety, stress, and reflux disease.

Dr. Raff referred plaintiff to occupational therapist Jeff Snodgrass for a functional capacity evaluation, which was conducted in December 2003. After examining plaintiff, the therapist concluded that plaintiff was able to stand, walk, bend, and stoop occasionally, and needed to be able to alternate between positions as his symptoms required. Plaintiff could also climb stairs occasionally—but not ladders—and could not crouch, squat, twist, or

perform low level work. Snodgrass found that plaintiff was limited to sedentary physical demands for lifting (up to 10 pounds occasionally); light physical demands for carrying, pushing, and pulling (up to 20 pounds occasionally); and should initially return to work for only three to four hours per day. This evaluation concluded that plaintiff was capable of sedentary to light work.

In a letter dated January 13, 2004, Dr. Raff opined that plaintiff had reached "maximum medical improvement and [was] not likely to become appreciably better or worse in the foreseeable future." With respect to his functional capacity, Dr. Raff concluded as follows:

> Based on his history and physical examination, imaging, and functional capacities evaluation, I would consider Mr. Templeton in a sedentary/light capacity of work which would allow freedom in the work space to sit or stand at will, move around the work space, and not be mandated to maintain any static postures longer than he is comfortable. It is likely he will require to be in/out [of] a seated or walking position about every 30 minutes. His work should not require lifting greater than 20 lbs. occasionally, 10 lbs. frequently, or 5 lbs. continuously, and lifting should be restricted to between the hips and shoulders. He should not do any forward extended lifting, i.e., non-ergonomic positions.

Dr. Raff released plaintiff from his care at that time and recommended that he continue pain management through his primary care doctor or a pain management specialist. Dr. Raff did not examine or treat plaintiff after that, and was on active military duty in Afghanistan between May 2004 and May 2005.

The ALJ chose to credit Dr. Raff's opinion concerning the extent of plaintiff's physical limitations over the conclusions of two non-examining agency reviewers who concluded plaintiff's exertional capacity was limited to sedentary work. The ALJ also

discounted the opinion of Norman Hankins, Ed.D., a psychologist who did a vocational evaluation of plaintiff, that there were no jobs that the plaintiff could perform on a full-time basis. Although Hankins conducted tests of the plaintiff's intellectual capacities, his evaluation of plaintiff's physical limitations was based on the limitations identified by Dr. Raff.

Plaintiff testified during the administrative hearing in February 2004 that he experienced pain almost all of the time, that the pain would radiate into one or both legs, and that he usually could not sit or stand for more than 15 to 20 minutes. He explained that when the pain is worse, which was one to three days a week, he could hardly get out of bed. At the time of the hearing, plaintiff was taking Neurontin and Lortab for pain. Plaintiff testified that he took 10 mg. of Lortab three times per day, and that it sometimes made him drowsy or "sort of sleepy."

The ALJ posed several hypothetical questions to vocational expert Cathy Sanders. Specifically, Sanders was asked to assume that an individual with plaintiff's age, education, and work experience had the capacity to do simple, unskilled light work activity that involved lifting up to 20 pounds occasionally and 10 pounds frequently, and that allowed for frequent postural changes. Sanders testified that a person with those vocational characteristics and functional capacities could work as a gate guard, parking lot attendant, information clerk, or ticket clerk. She added that 1,100 such jobs existed in the regional economy and 30,000 in the national economy.

When the ALJ asked Sanders to include as an additional limitation that pain would frequently interfere with the individual's ability to concentrate and persist at work tasks, she indicated that this limitation would eliminate the jobs she had identified. On cross-examination, Sanders agreed that the side effects of pain medication could also interfere with the ability to perform those jobs. Finally, when asked about sedentary work, Sanders responded that there were no unskilled sedentary jobs that would allow for frequent postural changes.

**B.     Analysis**

The ALJ credited Dr. Raff's assessment of the plaintiff's physical limitations, discounted plaintiff's testimony concerning the extent of his pain and the side effects of his medication, and concluded that plaintiff could do unskilled light work if it allowed for frequent postural changes and that a significant number of such jobs existed in the national economy. The regulations define light work as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of up to 10 pounds, while sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting and carrying of small objects. A job will also be light work if it requires a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling. 20 C.F.R. § 404.1567(b). Plaintiff contends on appeal that substantial evidence does not support the ALJ's determination that he was capable of performing light work that allowed for frequent postural changes.

First, plaintiff argues that the ALJ improperly disregarded the vocational expert's testimony that even those jobs would be eliminated if pain frequently interfered with his ability to concentrate and persist at work tasks or if the side effects of medication interfered with his ability to do those jobs. The ALJ did not reject the vocational expert's testimony, but simply found that neither plaintiff's pain nor the side effects of medication were of such severity that it would interfere with his ability to perform the identified jobs. We must affirm this conclusion unless it is not supported by or consistent with the evidence. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146 (6th Cir. 1996). The ALJ credited the treating physicians' assessments and diagnoses, evaluated the extent to which the severity of the plaintiff's pain could reasonably be accepted as consistent with the medical evidence, and found plaintiff's testimony about the extent of his pain was not fully credible. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters*, 127 F.3d at 531. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Id*. We find that there is substantial evidence in the record to support the ALJ's adverse credibility finding and conclusions that neither plaintiff's pain nor the side effects of pain medication precluded him from performing the identified jobs.

Next, it is argued that the ALJ mischaracterized the physical limitations identified by Dr. Raff as allowing light work. On the contrary, the ALJ's finding that the restrictions were consistent with a range of light work is supported by substantial evidence. There was no

limitation imposed on the amount of time plaintiff could stand or sit in a work day, only the requirement that the work provide him the freedom to alternate between sitting and standing as needed. Plaintiff seems to argue that because he could not perform a full range of light work, he should have been restricted to sedentary work and found disabled because there are no unskilled sedentary jobs that allow for frequent postural changes. When a claimant's functional abilities exactly meet the definition for a category of work, *i.e.*, light work, the Medical-Vocational Guidelines, or "grids," allow the ALJ to take notice of the number of jobs available in the national economy. *Heston*, 245 F.3d at 537. When, however, the claimant's characteristics do not exactly match the definition of, for example, light work, his residual functional capacity is used as the proper framework to determine whether he is disabled. *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). This is precisely what the ALJ did in this case when he determined the plaintiff's specific limitations and posed a hypothetical to the vocational expert concerning the number of simple, unskilled light work jobs that would also allow for frequent postural changes.[2]

After de novo review of the administrative record, we find the ALJ's conclusions are supported by substantial evidence and affirm.

**III.**

---

[2]Social Security Rule 83-12 explains that when an individual's residual functional capacity does not coincide with the definitions of any one of the ranges of work, the occupational base is affected and, when that effect is not clear, the ALJ is to consult a vocational resource. If the exertional level falls between two "grids" that would direct opposite conclusions concerning disability, more difficult judgments are involved as to the sufficiency of the remaining occupational base and the assistance of a vocational expert is advised.

In the alternative, plaintiff argues for remand for consideration of evidence that was not before the ALJ, but was submitted to the Appeals Council with the request for review. When the Appeals Council considers new evidence but declines to review the application for disability benefits, that evidence may not be considered as part of the record for purposes of the substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline*, 96 F.3d at 148. Remand under sentence six of 42 U.S.C. § 405(g) requires that the evidence be both new and material, and that there was good cause for not presenting it in the prior proceeding. *Foster*, 279 F.3d at 357. Evidence is "new" only if it was not in existence or was not available prior to the ALJ's decision. *Id.* Such evidence is "material" if there is a reasonable probability that the ALJ would have reached a different decision had the additional evidence been presented. *Id.* A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence at the hearing before the ALJ. *Id.*

At issue here is a one-page functional capacity assessment prepared by Dr. Raff in May 2005, after the ALJ's decision finding that plaintiff was not disabled. On that form, Dr. Raff indicated that plaintiff could only lift 10 pounds occasionally and 5 pounds frequently, could only work four hours a day, and would have to be free to alternate between sitting and standing at will. Dr. Raff also noted that he had been out of the country on military duty between May 11, 2004, and May 2, 2005, and confirmed that he was not available to answer interrogatories, act administratively, or clinically attend to plaintiff's care during that time.

To be sure, this assessment reflected greater exertional restrictions that would not be consistent with light work. We agree with the district court that this evidence is not material, however, because Dr. Raff offered no explanation for why his opinion of plaintiff's functional capacity had changed from January 2004. This is particularly significant as Dr. Raff had released plaintiff from his care and was out of the country from May 2004 through May 2005. Without an explanation for the change, it is not likely that the ALJ would have reached a different decision had the additional evidence been presented. The evidence is also not new because plaintiff could have requested a second assessment by Dr. Raff after receiving the letter in January 2004, or after the first denial of his application in March 2004. Plaintiff has not met the burden of demonstrating that a sentence six remand is warranted.[3]

**AFFIRMED.**

---

[3]While it is not clear whether the district court's decision not to remand should be reviewed *de novo* or for abuse of discretion, we need not resolve the question because we would affirm under either standard. *Compare Perkins v. Apfel*, 14 Fed. App'x 593 (6th Cir. 2001), and *Cranfield v. Comm'r, Soc. Sec.*, 79 Fed. App'x 852 (6th Cir. 2003).