NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0575n.06

No. 08-5912

| | | |
|---|---|---|
| **UNITED STATES COURT OF APPEALS**<br>FOR THE SIXTH CIRCUIT | | **FILED**<br>**Aug 18, 2009**<br>LEONARD GREEN, Clerk |

Doris A. Poe, )
)
  Plaintiff-Appellant, )
)
v. ) ON APPEAL FROM THE
) UNITED STATES DISTRICT
Commissioner of Social Security, ) COURT FOR THE EASTERN
) DISTRICT OF KENTUCKY
  Defendant-Appellee. )

**Before:** **KEITH, CLAY, and GIBBONS, Circuit Judges.**

**KEITH, Circuit Judge.** Plaintiff-Appellant Doris Ann Poe ("Poe") appeals the district court's decision affirming the Commissioner of Social Security's ("Commissioner") denial of Poe's application for disability insurance and supplemental security income ("SSI") benefits. Poe argues that: (1) the Administrative Law Judge ("ALJ") erred in failing to give controlling weight to the opinion of her treating physician; and (2) the ALJ's determination that Poe is capable of doing other work is not supported by substantial evidence. In addition, Poe contends that the district court erred by substituting its own "revised rationale" to uphold the decision of the Commissioner. For the reasons set forth below, we affirm the judgment of the district court.

**I.**

Poe was born on March 9, 1955. She attended high school up to the ninth grade, and later obtained a general equivalency diploma (GED). For approximately 25 years, Poe worked as an operator in a factory that manufactures rubber extrusion used to seal car windows. The job required

Poe to run machines and punch presses, package the finished parts in boxes, and lift boxes that weighed between fifty and seventy pounds. Poe's employment at the factory ended on or around April 1, 2003, for reasons related to her alleged disability.

Poe applied for disability insurance and SSI benefits on April 18, 2003, alleging disability as of April 1, 2003. Specifically, Poe alleged that she could not lift boxes and keep up with her production quota due to physical disabilities, including her left hip "giv[ing] out," pain in her lower back, and numbness in her hands and feet, causing her such stress that she would cry. After her application was denied initially and on reconsideration, Poe requested a hearing before an ALJ, which was held on July 21, 2004. On July 30, 2004, the ALJ issued an unfavorable decision, finding that Poe was not disabled. On January 21, 2005, the Appeals Council denied Poe's request for review. Poe appealed the ALJ's decision to the district court and, on March 29, 2006, the court issued an order reversing the ALJ's determination and remanding the matter to the Commissioner for further consideration. Specifically, the district court found that there was not substantial evidence to support the ALJ's decision in light of the ALJ's reliance on the testimony of a vocational expert, which conflicted with information in the Dictionary of Occupational Titles ("DOT").[1] *See Poe v. Barnhart*, No. 05-CV-48-JBC (E.D. Ky. Mar. 29, 2006) ("*Poe I*").

In accordance with the district court's remand, a second hearing was held before the ALJ on July 31, 2006. On December 1, 2006, the ALJ once again issued an unfavorable decision, finding that Poe was not disabled. On June 12, 2007, the Appeals Council issued its decision, declining to

---

[1] The issue prompting the remand was that many of the positions identified by the vocational expert at the July 21, 2004 hearing had a specific vocational preparation level higher than allowed by the ALJ's hypothetical question.

assume jurisdiction, thereby rendering the ALJ's December 1, 2006 determination the final decision of the Commissioner.

Poe appealed the ALJ's second denial to the district court and, on May 21, 2008, the court issued an order and opinion affirming the ALJ's determination. *See Poe v. Astrue*, No. 07-CV-253-GWU, 2008 WL 2151999, at *3 (E.D. Ky. May 21, 2008) ("*Poe II*"). Poe filed a timely appeal with this Court.

## II.

*A.      Relevant Medical History*

In 2002, after complaining of tingling and weakness in both hands, and discomfort in her lower back, Poe was referred to a neurologist, Dr. William Blake. On September 3, 2002, Dr. Blake performed a nerve conduction study on Poe, which showed evidence of mild carpal tunnel syndrome in both hands. He ordered lower back x-rays and treated Poe with wrist splints. On March 1, 2003, a second nerve conduction study performed on Poe by Dr. Blake showed signs of improvement in both hands.

On July 31, 2003, Dr. Michael A. Boyd, Poe's treating physician, presented medical records to the Commissioner describing his treatment of Poe from June 28, 2001 through July 24, 2003. According to Dr. Boyd's records, Poe complained of right shoulder pain on November 23, 2001, but maintained a full range of motion with slight tenderness. However, during two subsequent examinations, on December 5, 2001 and on September 11, 2002, Poe did not complain of shoulder, back, wrist or hand pain. On September 20, 2002, Poe visited Dr. Boyd to obtain a tuberculosis test because she was preparing to set up a day care center. In his report detailing Poe's September 20,

2002 visit, Dr. Boyd discussed the results of the lower back x-rays ordered by Dr. Blake and noted that Poe appeared to be "doing quite well."

On November 25, 2002, Poe complained of tenderness and muscle spasms in her neck, but exhibited no signs or complaints of numbness or tingling. Additionally, Dr. Boyd found no evidence of abnormalities in Poe's extremities. On three subsequent visits to Dr. Boyd (December 8, 2002, January 29, 2003, and March 12, 2003), Poe made no mention of tenderness or muscle spasms. During Poe's March 12, 2003 visit with Dr. Boyd she complained of lower abdominal pain, but was not suffering from back pain.

On June 17, 2003, Poe complained of numbness in her hands, which Dr. Boyd opined was "probably carpal tunnel." Following an examination of Poe on July 3, 2003, Dr. Boyd noted, "[Poe] said she has not been able to work since April and the real problem is that she has gone ahead and filed disability. . . . I talked to her about the application for disability. I didn't think she was really a candidate at this point in time."

On September 4, 2003, Poe was referred for consultation with a rheumatologist, Dr. Manoj Kohli. According to Dr. Kohli, Poe maintained a good range of movement in her shoulders, elbows, wrists, fingers, hips, knees, and ankles. Dr. Kohli's assessment of Poe indicated she suffered from fibromyalgia, depression, sleep dysfunction, and mild carpal tunnel syndrome. He prescribed daily stretching and aerobic exercises. On October 30, 2003, Dr. Kohli noted an overall improvement in Poe's condition, as a result of physical therapy and the use of wrist splints.

An MRI of the cervical spine performed on Poe on February 19, 2004, revealed "multi-level degenerative changes . . . leading to mild spinal canal stenosis at the C5-6 and the C6-7 " vertebrae.

As a result, Dr. Boyd referred Poe to Dr. Brett Scott for a neurological evaluation. During her visit with Dr. Scott, on April 10, 2004, Poe complained of neck pain radiating into the shoulders. Dr. Scott noted, however, that Poe "does not really have any arm pain, weakness or numbness." Dr. Scott recommended range-of-motion exercises for the neck. On February 22, 2005, Dr. Scott noted a decreased range of motion in Poe's neck, as compared to his April 2004 examination. Dr. Scott also observed a "frozen" left shoulder, which Poe could not abduct more than ninety degrees without experiencing some pain. However, Dr. Scott noted that Poe's right shoulder was normal; that she maintained a normal gait and coordination; and that she had normal reflexes in her biceps, triceps, knees, and ankles, as well as normal strength and sensation in her arms and legs. In his final examination of Poe, on March 18, 2005, Dr. Scott noted no change in Poe's condition.

On May 11, 2005, Dr. Charlotte Harris performed surgery on Poe to "decompress her left carpal tunnel." On May 20, 2005, Dr. Harris noted that the "numbness and burning in [Poe's] hand is dramatically better." However, on June 17, 2005, Poe returned to Dr. Harris complaining of significant shoulder pain. An x-ray revealed "minimal AC spurring and hook[ing]" in the AC joint of Poe's left shoulder. Consequently, Dr. Harris recommended a course of physical therapy.

On August 24, 2006, Dr. Boyd completed a questionnaire designed to assess Poe's physical abilities and limitations. Dr. Boyd stated that his findings were based on a physical examination. However, Poe did not submit a record of such examination. In his findings, Dr. Boyd stated that Poe could lift no more than ten pounds, nor could she stand or walk more than two hours in an eight-hour workday. He further stated that Poe was capable of frequent balancing as well as occasional

stooping, crouching, kneeling, and climbing, but no crawling. Finally, Dr. Boyd noted that Poe's ability to reach, pull, handle, finger, feel, and push were all limited.

**B.     *The ALJ Hearing***

At her July 2006 hearing, in addition to testifying that she voluntarily left her job in April 2003 because of back problems which precluded her from lifting, Poe testified that she suffered difficulties and experienced pain and other symptoms associated with her neck, left shoulder, left hip, left leg, elbows, feet, hands, and fingers, as well as carpal tunnel syndrome, for which she wore splints at night. She also noted that she was taking medication for her nerves, but had stopped attending physical therapy. Poe further testified that since she stopped working, she spends her days taking care of her six-year-old daughter, including making her food, helping her get dressed, washing clothes, and grocery shopping.

In addition to her own testimony, Poe presented extensive medical records which confirmed that she had carpal tunnel syndrome and mild impingement syndrome in her left shoulder, a history of right shoulder pain, a diagnosis of fibromyalgia by a rheumatologist, and a diagnosis of depression by a psychiatrist. Poe also presented a functional capacity assessment by her treating family physician, Dr. Boyd, which essentially limited Poe to less than full-time sitting or standing. In a written statement, Dr. Boyd noted that his "findings are subjective based on physical exam and interview with patient" and that "should objective findings be necessary, [I] recommend [a] work hardening evaluation." Ultimately, the ALJ afforded Dr. Boyd's opinion "little weight" because it was "based upon [Poe's] subjective complaints without the benefit of objective data."

Poe presented other evidence of functional restrictions from state agency reviewing sources. On June 8, 2003, Dr. Carlos Hernandez, a state agency medical consultant, reviewed the record and concluded that Poe could lift and carry fifty pounds occasionally, twenty-five pounds frequently, and sit, stand, and walk for up to six hours in an eight-hour work day. Dr. Hernandez also limited Poe to no more than frequent bilateral handling, and recommended that Poe avoid even moderate exposure to vibratory tools. On August 13, 2003, a second state agency medical consultant, Dr. James Ramsey, reviewed the record and reached the same conclusion as Dr. Hernandez. These findings by Dr. Hernandez and Dr. Ramsey were consistent, albeit less restrictive, than the ALJ's ultimate finding.

At Poe's July 2006 administrative hearing, the ALJ found that Poe indeed suffered from "severe impairments," including, "chronic neck and low back pain due to degenerative disc disease of the cervical and lumber spine with arthritis of the facet joints; mild bilateral carpal tunnel syndrome; gastroesophageal reflux disease; biliary dyskinesua; multiple arthralgias, rule out fibromyalgia; and depression." However, the ALJ determined that although Poe had "severe impairments," her claims regarding her limitations were "not entirely credible" and found that Poe retained the residual functional capacity to perform a significant number of jobs existing in the national economy.

At the conclusion of the hearing, the ALJ asked the vocational expert to consider a hypothetical individual with the residual functional capacity attributed to Poe in the ALJ's decision. Specifically, the ALJ asked the vocational expert whether a person of Poe's

age, education, and work experience could perform jobs if she were capable of either light or sedentary exertion, and also had the following non-exertional restrictions: (1) could not climb ladders, ropes, or scaffolds; (2) could not work with her hands above shoulder level; (3) could occasionally flex and extend her wrists, perform occasional handling or gripping, and occasional pushing and pulling with her upper extremities; (4) could have no exposure to concentrated vibration or vibratory hand tools; (5) could occasionally bend, twist, or crawl; and (6) required simple work with repetitive procedures, no frequent changes in work routines, and no fast-paced assembly lines or rigid production schedules.

The vocational expert responded that while such person could not perform any of Poe's past relevant work, there were jobs he or she could perform – "basically entry level, low stress jobs" where there were "no frequent changes in work routine[,] [] no rigid production schedules[,] and no fast-paced assembly line work activities." Specifically, the vocational expert testified that such an individual could perform the following occupations as defined in the DOT: (1) counter clerk (light exertion level, DOT code 249.366-010); (2) monitor (light duty job, DOT code 372.667-040[2]); (3) surveillance security monitor (sedentary job, DOT code 379.367-010); (4) attendant-related job (light in exertion, DOT code 349.677-018); (5) usher (light in exertion, DOT Code 344.677-014); and (6) machine tending jobs (light in exertion, DOT code 728.685-010).

## III.

Judicial review of the Commissioner's decision that a claimant is not disabled is limited to determining whether the ALJ applied the correct legal standard in reaching his decision and whether such determination is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405

---

[2] This purported DOT entry, cited by the vocational expert in his testimony at Poe's July 21, 2004 administrative hearing, and cited again by the ALJ in the subsequent unfavorable decision issued on December 1, 2006, does not exist in the DOT. Accordingly, the Commissioner conceded before the district court that this job should not be considered in determining whether the ALJ's decision was supported by substantial evidence. *Poe II*, 2008 WL 2151999, at *5.

(g); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). We review the district court's

legal conclusion that the ALJ's decision was supported by substantial evidence *de novo*. *Valley v.*

*Comm'r of Soc. Sec.*, 427 F.3d 388, 390 (6th Cir. 2005).

"Substantial evidence exists when a 'reasonable mind might accept' the relevant evidence

'as adequate to support a conclusion.'" *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.

2004) (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). The

Court must defer to the Commissioner's decision "even if there is substantial evidence in the record

that would have supported an opposite conclusion, so long as substantial evidence supports the

conclusion reached by the ALJ." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, this Court "[does] not try the case *de novo*,

resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506,

509 (6th Cir. 2007).

## IV.

Poe raises three issues on appeal. She argues: (1) the ALJ erred in his determination of her

residual functional capacity by failing to accord the proper weight to the opinion of her treating

physician and by acting as his own medical expert in rendering a residual functional capacity

assessment without proper consideration of the medical opinions of record; (2) the ALJ's

determination that Poe can make an adjustment to other work available in the national economy is

not supported by substantial evidence in light of the vocational expert's testimony and "fatal flaws"

in some of the vocational evidence; and (3) the district court engaged in prohibited post hoc

rationalization, thereby affirming the ALJ's determination for reasons not contained in the administrative decision.

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical
> or mental impairment or impairments are of such severity that he is not only
> unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work
> which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

To determine if a claimant is disabled within the meaning of the Act, the ALJ must follow a five-step analysis, as set forth in 20 C.F.R. § 404.1520. Pursuant to the five-step inquiry:

(1)    A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

(2)    A claimant who does not have a severe impairment will not be found to be disabled.

(3)    A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

(4)    A claimant who can perform work that he has done in the past will not be found to be disabled.

(5)    If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be

considered to determine if other work can be performed.

*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683-84 (6th Cir. 1992)).

The claimant bears the burden of proof at steps one through four. *Warner*, 375 F.3d at 390. At step five, however, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones*, 336 F.3d at 474. In the instant appeal, it is undisputed that Poe can no longer perform her past work. Thus, this Court's analysis centers on whether substantial evidence supports the ALJ's determination that, based on Poe's residual functional capacity, age, education, and work experience, she can make an adjustment to other work available in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## A. *Residual Functional Capacity*

Residual functional capacity is defined as the most a claimant can still do despite the physical and mental limitations resulting from her impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). In the instant matter, the ALJ determined that while Poe had "severe impairments," her claims regarding her limitations were "not entirely credible," and that, accordingly, Poe's residual functional capacity does not preclude her from performing:

> light or sedentary work with no climbing of ropes, ladders or scaffolds; no work with hands above shoulder level; occasional flexion or extension of the wrists; occasional handling or gripping; occasional pushing/pulling with the upper extremities; no exposure to concentrated vibration or vibrating hand tools; occasionally bending, twisting, stooping or crawling; requires simple work with repetitive procedures; no frequent changes in work routines; no fast-paced assembly lines or rigid production schedules.

Poe argues that the ALJ's residual functional capacity determination is not supported by substantial evidence because the ALJ failed to accord proper weight to Dr. Boyd's opinion, in violation of the "treating physician" rule set forth in 20 C.F.R. §§ 404.1527(b) and 416.927(b). Poe contends that the ALJ instead acted as his own medical expert, thereby rendering a residual functional capacity finding without properly considering the medical opinions of record. We disagree.

Pursuant to the Social Security regulations, the ALJ is required to evaluate every medical opinion and consider the following non-exhaustive factors in deciding what weight to give each opinion: examining relationship, treatment relationship, the extent to which medical signs and laboratory findings support the opinion, the consistency of the opinion with the record as a whole, and the specialization of the doctor rendering the opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). "Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner*, 375 F.3d at 390 (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)). However, "[t]reating physicians' opinions are only given such deference when supported by objective medical evidence." *Id.*; *Jones*, 336 F.3d at 477. "If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her [sic] rejection." *Jones*, 336 F.3d at 477 (citing *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)). "[T]he determination of disability is the prerogative of the [Commissioner], not the treating physician." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

Here, substantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective

complaints, rather than objective medical data. Moreover, Dr. Boyd's opinion is inconsistent with

the record as a whole and, arguably, not even supported by his own treatment notes. For example,

although Dr. Boyd claimed that his August 24, 2006 conclusions regarding Poe's residual function

assessment were based on a physical examination as well as an interview with Poe, there is no

evidence of a physical examination on or around that date. In fact, the final medical record received

from Dr. Boyd was dated July 3, 2003, and reflected Dr. Boyd's express opinion that Poe was not

a candidate for disability. Poe presented no other objective medical evidence to explain how or why,

in Dr. Boyd's opinion, Poe was not a candidate for disability in July 2003, but degenerated to the

point of being unable to perform sedentary work by August 2006.[3] Moreover, the limitations

proposed by Dr. Boyd were also contradicted by the findings of Poe's other treating physicians, as

well as two state agency medical consultants. Thus, we find that the ALJ's determination regarding

Dr. Boyd's opinion was reasonable and supported by substantial evidence.[4]

Poe further argues that the ALJ improperly based his residual functional capacity finding on

his own interpretation of the medical evidence. In determining Poe's residual functional capacity,

the ALJ found that "[a]fter listening to claimant's testimony, observing her demeanor and observing

said testimony in light of the objective medical records, it appears that the claimant is trying to make

---

[3]Poe's assertion that the ALJ was required to "re-contact" Dr. Boyd for clarification is also unsupported, as an ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician. *See* 20 C.F.R. §§ 404.1512(e), 416.912(e).

[4]Furthermore, although the ALJ did not give Dr. Boyd's opinion controlling weight, the ALJ's residual functional capacity finding did incorporate the limitations that were consistent with the other evidence of record, including the findings of Poe's other treating physicians.

her symptoms sound significantly more severe than they actually are." In support of her contention, Poe argues that "[t]he ALJ does not cite *any* medical opinion to explain of [sic] the medical findings, but bases the [residual functional capacity] determination on his own interpretation of the medical evidence, inferences he draws from the nature and extent of the claimant's daily activities, as well as his keen knowledge of human nature." Poe's contention is belied by the record.

The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c). Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Moreover, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding. *See Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 197 (6th Cir. 2004). Accordingly, the ALJ's rejection of Dr. Boyd's opinion was permissible and supported by substantial evidence.

**B.      *Vocational Expert***

As noted above, at step five of the assessment, the ALJ must determine whether a claimant's residual functional capacity will allow her to perform a significant number of jobs in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). In so doing, typically, the ALJ poses a hypothetical question incorporating a claimant's residual functional capacity to a vocational expert, and asks how many jobs, if any, the claimant can perform. *See id.* If the vocational expert is able to identify a significant number of jobs

the hypothetical individual can perform, substantial evidence supports a finding that the claimant is not disabled. *Davis v. Sec'y of Health & Human Servs.*, 915 F.2d 186, 189 (6th Cir. 1990).

Here, based in part on the testimony of the vocational expert, the ALJ determined that although Poe could not perform her past relevant work, she retained the residual functional capacity to perform a significant number of jobs in the national economy and therefore was not disabled. The vocational expert testified that a hypothetical individual with the residual functional capacity ultimately adopted by the ALJ could perform the following occupations as defined in the DOT: (1) counter clerk, (2) security monitor, (3) surveillance security monitor, (4) attendant/usher,[5] and (6) machine tender. The Commissioner acknowledged before the district court that the vocational expert's testimony was inconsistent with the DOT in that the designation number provided by the vocational expert for the position of "security monitor" does not exist. Because it was not possible to determine the basis for the discrepancy in the DOT number provided by the vocational expert, the Commissioner conceded that the job of security monitor should not be considered in determining whether the ALJ's decision was supported by substantial evidence. This discrepancy, however, is nothing more than harmless error, as substantial evidence supports a finding that Poe could perform five of the six jobs identified by the vocational expert, totaling approximately 1,385,000 jobs in the national economy.

Poe's numerous attempts to undermine the credibility of the vocational expert's testimony by asserting that the performance requirements of the jobs listed by the vocational expert, with the

---

[5]The vocational expert identified the "attendant-related" jobs and the "usher" jobs by their separate DOT designation, but stated that they produced a combined total of 410,000 jobs in the national economy.

possible exception of the "attendant/usher" jobs, are inconsistent with the mental and/or physical

limitations, are not persuasive. For example, Poe argues that the job of counter clerk is inconsistent

with the mental limitations adopted in the hypothetical posed by the ALJ. In support of her

contention, Poe offers the testimony of her own vocational expert, Robert E. Breslin ("Breslin"),[6]

who, referring to the Occupational Outlook Handbook (rather than the DOT), opined that the

position of counter clerk was not one of "routine work" as posited in the hypothetical, but rather a

position that required an individual be able to handle several tasks at one time, as customer demand

required. However, while the ALJ is certainly authorized to take administrative notice of job data

from various sources, including the testimony of Poe's own vocational expert, he was not *required*

to accept Breslin's opinion over that of the vocational expert who based his opinion on the contents

of the DOT. *See* 20 C.F.R. §§ 404.1566(d), 416.966(d). As the district court correctly noted, Social

Security Ruling (SSR) 00-4p only requires the ALJ to elicit a reasonable explanation when there is

conflict between the vocational expert and the DOT. *See* SSR 00-4p, at *2. The ruling does not

require that the ALJ attempt to address or resolve conflicts between the testimony of a vocational

expert and the Occupational Outlook Handbook. *Id.* The ALJ's summary of the evidence indicates

that he reviewed Breslin's letter but chose to accept the testimony of the vocational expert, which

was well within the ALJ's discretion.

---

[6]Breslin provided his opinion by letter and thus was not available for cross-examination. Also, Breslin's opinion was provided on the validity of the testimony offered by the vocational expert in Poe's first administrative hearing, held on July 21, 2004, which resulted in reversal and remand by the district court. Thus, most of the jobs discussed in Breslin's letter were not cited by the vocational expert in the July 31, 2006 administrative hearing at issue in this appeal.

Poe's arguments that the requirements for the surveillance security monitor and the machine tender jobs are inconsistent with the physical limitations adopted in the hypothetical posed by the ALJ are similarly unavailing. For example, Poe's challenge to the job of surveillance security monitor is rooted in the premise that the ALJ found her capable of performing limited sedentary work only. However, the ALJ found Poe capable of performing both limited sedentary *and* light work.[7] Thus, Poe's argument – that based on the ALJ's residual functional capacity determination, she could not work as a surveillance system monitor – is not supported by the evidence. Finally, Poe's contention that the vocational expert's testimony regarding the physical requirements for the job of machine tender is not consistent with the ALJ's hypothetical in light of the DOT's statement that the job requires "frequent fingering and reaching" is also unavailing, as the hypothetical questions presented to the vocational expert contain no limits on Poe's ability to reach and/or finger. Furthermore, the DOT is consistent with the hypothetical in that it requires only "occasional" handling, which is the factor the vocational expert testified was most relevant to the hypothetical restrictions.

Accordingly, we find that substantial evidence supports the ALJ's residual functional capacity finding, as well as his conclusion that Poe can perform a significant number of jobs in the national economy and therefore was not disabled.

## C.    *Post Hoc Rationalization*

---

[7] Poe's claim that this job no longer applies to her due to her current age of 55 is also based on the erroneous assertion that the ALJ found her capable of performing limited sedentary work only, as the rule upon which Poe relies addresses when the ability of an individual found capable of performing sedentary work becomes irrelevant.

Finally, Poe argues that the district court impermissibly used post hoc rationalizations, substituting its own "revised rationale" to uphold the decision of the Commissioner. Because a review of the record clearly shows that the ALJ's decision is supported by substantial evidence, as discussed herein, we need not address these alleged errors.[8] *See Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 847 (6th Cir. 2005) ("Having conducted our own review of the ALJ's decision and found it supported by substantial evidence, we need not address [claimant's allegations that the district court impermissibly used post-hoc rationalizations to uphold the ALJ's decision].")

## V. CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's decision.

---

[8]We note, however, that Poe's contention is belied by the record, as the district court opinion does not offer a "revised rationale." Rather, the court simply referenced additional evidence in the record to establish that the ALJ's decision was supported by substantial evidence.