NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0420n.06

No. 24-3333

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ANNA M. DUNLAVY,

    Plaintiff-Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)

**FILED**
Oct 23, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE
SOUTHERN DISTRICT OF
OHIO

OPINION

---

Before: COLE, MATHIS, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. The Social Security Administration denied Anna Dunlavy's application for disability insurance benefits. Dunlavy challenged that decision in district court, arguing the Administrative Law Judge did not adequately consider the medical opinion of two state-designated psychologists. The district court affirmed, and Dunlavy appealed. Because the ALJ sufficiently explained her findings regarding the psychologists' opinion and the findings are supported by substantial evidence, we affirm.

**BACKGROUND**

Anna Dunlavy has suffered from severe physical and mental impairments since at least 2014. She has asthma, a history of hypertension, and a degenerative joint disease. She struggles with depression, dysthymia, anxiety, and post-traumatic stress disorders. And she is obese, which can exacerbate her other conditions. Still, Dunlavy helped her father run a restaurant drive-through window from 1990 to 2015, and then worked part-time at Walmart for about six months. After

taking some time off, she began working for a catering service in December 2017. Dunlavy worked there until June 2018, when she was involved in a car accident and sustained injuries to her chest, abdomen, and right hand.

Following the accident, Dunlavy's mental health symptoms worsened. She rarely left her home because of constant anxiety and paranoia. She lost interest in pursuing hobbies and interacting with others, including her family members. Instead, she watched online videos and movies for most of the day, alone. Dunlavy eventually attempted to go back to work but struggled to concentrate, felt uncomfortable around others, and suffered panic attacks.

Dunlavy filed an application for disability insurance benefits, alleging that she qualified as disabled beginning June 2017. After an evidentiary hearing, an ALJ concluded that Dunlavy was not disabled under the Social Security Act. *See* 42 U.S.C. §§ 416(i), 423(d). The ALJ followed the Social Security Administration's five-step process for determining whether an individual is "disabled" as defined by the Act. *See* 20 C.F.R. § 404.1520(a). Relevant here, the ALJ determined that Dunlavy has a residual functional capacity (RFC)—that is, ability to work despite limitations from her impairments—consistent with widely available jobs. Specifically, she could still "perform light work" with "additional limitations." ALJ Decision, R. 7-2, PageID 45 (citing 20 C.F.R. § 404.1567(b)). The ALJ found that Dunlavy could perform "goal oriented work" consisting of "unskilled simple, routine and repetitive tasks." *Id.* She could follow "simple instructions," ask "simple questions," and interact occasionally with colleagues. *Id.* But the ALJ also recognized that Dunlavy could not work at a fast pace, collaborate with others, resolve conflict, engage in complex social interactions, or interact with the public. Consistent with these limitations, the ALJ determined that Dunlavy could perform "jobs that exist in significant numbers in the national economy," meaning she is not "disabled" under the Act. *Id.* at PageID 52–53.

In support of its determination, the ALJ reasoned that Dunlavy's account of her symptoms' "intensity, persistence and limiting effects" conflicted with evidence in the record. *Id.* at PageID 46. As it related to Dunlavy's mental impairments specifically, the ALJ pointed to five reasons why she viewed the record as "inconsistent with a finding of disabling mental symptoms." *Id.* at PageID 49. First, Dunlavy did not take her prescribed medication and used marijuana instead. Second, Dunlavy did not seek consistent counseling or pharmaceutical treatments despite referrals. Third, Dunlavy performed household chores, cared for her pets, fished, gardened, and babysat her grandchildren, suggesting her impairments do not "seriously interfere" with her ability to concentrate on tasks, follow instructions, adapt, and interact with others. *Id.* Fourth, some of Dunlavy's statements about her symptoms and regular activities contradicted each other. For example, while she claimed to never leave her house or get in a car out of fear, she suggested she and her husband drive their grandchildren to school. She also denied or failed to report having anxiety or depression on multiple occasions. Finally, although Dunlavy claimed to have memory problems, she displayed normal memory during multiple examinations. Altogether, the ALJ concluded that Dunlavy's impairments were not necessarily the reason she stopped working and that her "complaints of disabling symptoms are not consistent with the evidence of record." *Id.* at PageID 50.

In evaluating Dunlavy's employment restrictions, the ALJ considered a joint medical opinion from Drs. Bonnie Katz and Aracelis Rivera, two psychologists designated by Ohio's Division of Disability Determination to review Dunlavy's case. Drs. Katz and Rivera stated that Dunlavy "could perform routine short cycle work tasks . . . in a solitary work setting with flexible attendance and punctuality standards." *Id.* They further opined that Dunlavy "could make simple decisions" but would not be able to "sustain consistent close attention to detail," work at a

"consistent[ly] fast pace," "solve complex problems," or "independently manage competing task demands." *Id.* And, according to Drs. Katz and Rivera, Dunlavy could only have short, superficial, structured interactions with both coworkers and the public.

Given these proposed limitations, the ALJ asked a testifying vocational expert what kinds of jobs Dunlavy could perform, if any. The ALJ asked if there are jobs that require "performing unskilled, simple, routine, repetitive tasks," and where one need not "perform at a production rate pace" or have much interaction with others, among other proposed limitations. *See* ALJ Decision Exs., R. 7-2, PageID 76-77. The vocational expert responded with three widely available jobs consistent with those limitations. The ALJ then asked whether there are jobs that could also accommodate "a solitary workstation and flexible attendance schedule." *Id.* at PageID 78. The vocational expert responded: "No," because those limitations are "work preclusive in the competitive job market." *Id.*

Ultimately, the ALJ found Drs. Katz and Rivera's opinion "minimally persuasive." *Id.* at PageID 50–51. She first reasoned that Dunlavy need not be strictly limited to "routine short cycle work tasks" that do not require "sustain[ed] consistent close attention to detail nor consistent fast pace." *See id.* Instead, the ALJ determined the psychologists' opinion is "more consistent with a [more] moderate limitation in understanding, remembering and applying information," and therefore less severe limits to her working capacity. *See id.* at PageID 51. Second, the ALJ found "absolutely no support in the record" for Dunlavy needing a "solitary setting with flexible attendance," adding that "the term 'flexible' is not a vocationally relevant term." *Id.* Finally, the ALJ explained that the limitations she prescribed adequately accounted for the portion of the psychologists' opinion that Dunlavy should have only limited contact with others.

Dunlavy challenged the ALJ's decision in the district court, arguing the ALJ did not properly account for Drs. Katz and Rivera's opinion. The district court affirmed, concluding that the ALJ's decision adequately addressed the psychologists' proposed limitations and was supported by substantial evidence. Dunlavy timely appealed.

### ANALYSIS

Dunlavy disputes two of the findings underlying the ALJ's determination that the psychologists' opinion was only "minimally persuasive": (1) that "there is absolutely no support in the record for the need for a solitary setting with flexible attendance," and (2) that "'flexible' is not a vocationally relevant term." ALJ Decision, R. 7-2, PageID 51. In addressing these two disputes, our review "is limited to whether the ALJ applied the correct legal standards" and whether the ALJ's findings "are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also* 42 U.S.C. § 405(g). The substantial evidence standard requires "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation omitted).

### I. "Solitary Setting with Flexible Attendance"

The ALJ's finding that Dunlavy does not need "a solitary setting with flexible attendance" is supported by substantial evidence. ALJ Decision, R. 7-2, PageID 51. The ALJ highlighted several inconsistencies between the psychologists' recommendations and evidence about Dunlavy's condition. For example, the ALJ found that Dunlavy's ability to perform activities such as household chores, gardening, and babysitting her grandchildren on "a regular and continuing basis" indicated that her symptoms do not "seriously interfere" with her ability to concentrate, "perform routine tasks," adapt, or interact with others. *Id.* at PageID 49. The ALJ also noted that

Dunlavy's statements about her impairments sometimes contradicted her actions and other objective evidence. For example, she discontinued her medication and demonstrated normal memory on multiple examinations. *See Adams v. Comm'r of Soc. Sec.,* No. 23-3284, 2023 WL 6366106, at *3 (6th Cir. Sept. 28, 2023) (per curiam) (noting that a "history of conservative treatment" and "unremarkable physical examinations" supported the ALJ's finding that a medical opinion about disabling limitations lacked support in the record). And Dunlavy herself testified, "I feel like I could be around people in a normal work setting." ALJ Decision Exs., R. 7-2, PageID 73; *see also Rogers*, 486 F.3d at 246. The ALJ accordingly found that Dunlavy does not need a solitary work setting because her regular activities show she can maintain concentration and interact with others, and that she does not need a flexible attendance policy because she can perform activities on a "regular and continuing basis." ALJ Decision, R. 7-2, PageID 49. Collectively, this constitutes substantial evidence supporting the ALJ's findings.

Dunlavy's arguments to the contrary are unpersuasive. She first highlights evidence supporting Drs. Katz and Rivera's recommended limitations, contending that the ALJ could not have found that "there is absolutely no support in the record" for them. But because substantial evidence supports the ALJ's finding that Dunlavy does not need a solitary workspace or flexible attendance policy, we affirm, even where some evidence points the other way. *Blakely*, 581 F.3d at 406. Because "weighing conflicting evidence [is] properly within the ALJ's role," we do not disturb her findings here. *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *7 (6th Cir. June 12, 2024).

Next, Dunlavy cautions us against pulling from various parts of the ALJ's decision to support her determinations, which would cause claimants to have to "go on a scavenger hunt" to discern an ALJ's reasoning. Reply Br. at 10. But we need not go on a "scavenger hunt" to find

support for the ALJ's findings here. The ALJ evaluated the psychologists' opinion in the same section of her decision in which she discussed the inconsistencies in the record. That is enough to "connect the dots." Reply Br. at 10; *see Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (per curiam).

Taking it a step further, Dunlavy argues the Commissioner's justifications for the ALJ's findings are "*post hoc* rationalization[s]" the ALJ herself did not consider. Reply Br. at 8. But the ALJ provided the reasoning discussed above in her decision, and substantial evidence supports that decision, obviating the need for us to consider any purported post hoc rationalization. *See, e.g.*, *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 159 & n.8 (6th Cir. 2009).

Lastly, Dunlavy contends that the ALJ's decision to limit her to no contact with the public as part of her job, rather than a solitary work setting, was not sufficient to address Drs. Katz and Rivera's opinion. But the ALJ's choice not to incorporate the psychologists' recommendations into Dunlavy's prescribed limitations does not mean the ALJ did not adequately consider their opinion. Rather, the ALJ considered it, found it "minimally persuasive," and thus excluded the recommended limitation. *See* ALJ Decision, R. 7-2, PageID 50–51; *see also Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) ("Because the ALJ properly discounted the medical opinions of the other doctors, he also properly excluded the limitations assessed by those doctors . . . ."). And, as we have explained, her decision to exclude the proposed limitations is supported by substantial evidence.

## II.     "'Flexible' is Not a Vocationally Relevant Term"

Dunlavy next challenges the ALJ's finding that "'flexible' is not a vocationally relevant term." ALJ Decision, R. 7-2, PageID 51. While it is unclear whether the ALJ meant that "flexible" is not relevant to Dunlavy's case specifically or writ large, we need not determine the precise

meaning to resolve this case. What matters instead is that the ALJ sufficiently considered the psychologists' opinion and that her conclusion that Dunlavy does not need a "flexible attendance" limitation is supported by substantial evidence. *See Blakely*, 581 F.3d at 405–06.

Dunlavy argues that the ALJ could not have reached this conclusion based on her questioning of the testifying vocational expert. When assessing a claimant's limitations, ALJs often ask hypothetical questions about proposed limitations to help determine the kinds of jobs the claimant could perform. *See Poe*, 342 F. App'x at 157. Here, the ALJ asked if there are jobs for someone who needs "a solitary workstation and flexible attendance schedule." ALJ Decision Exs., R. 7-2, PageID 78. The vocational expert responded that such a limitation would be "work preclusive in the competitive job market." *Id.* According to Dunlavy, because the ALJ and the vocational expert both seemed to understand the phrase "flexible attendance," it must be vocationally relevant and incorporated into her prescribed limitations.

Dunlavy's argument conflates consideration with adoption. When an ALJ uses a physician's opinion in a hypothetical, it does not mean she accepted that opinion. *Crum*, 660 F. App'x at 457. An ALJ might ask about a medical opinion and, after considering the answer alongside other information in the record, find it "neither well supported nor consistent with [the claimant's] treatment record." *Id.* That is what the ALJ did here. She asked the vocational expert about the proposed limitation but eventually found that Dunlavy does not need it. The ALJ noted that Dunlavy performed relevant activities "on a regular and continuing basis," suggesting that her symptoms do "not seriously interfere" with her ability to do routine tasks. ALJ Decision, R. 7-2, PageID 49. This constitutes substantial evidence that Dunlavy does not need a "flexible attendance" limitation.

**CONCLUSION**

We affirm the district court's judgment.