**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0084n.06
Filed: February 2, 2009

**United States Court of Appeals**
FOR THE SIXTH CIRCUIT

_____

No. 07-5897

_____

| | | |
|---|---|---|
| Vivian Kelly, on behalf of Aaron Hollowell, | * * * | |
| Plaintiff - Appellant, | * * | |
| v. | * * | On Appeal from the United States District Court for the Western District of Kentucky |
| Commissioner of Social Security, | * * * | |
| Defendant - Appellee. | * | |

Before: MARTIN, GRIFFIN, and JOHN R. GIBSON,[*] Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Vivian Kelly, aunt and guardian of Aaron Hollowell, appeals from the district court's judgment in favor of the Commissioner of Social Security denying Aaron's application for childhood Supplemental Security Income benefits. Aaron suffers from Attention Deficit-Hyperactivity Disorder, which the ALJ found did not meet or equal the "listings," i.e., disabling conditions recognized and described in the social security regulations. Mrs. Kelly contends that the ALJ was obliged to obtain a new opinion from a medical expert in response to new evidence she presented at the hearing, but that the ALJ failed to do so. She also argues that the ALJ's conclusion that

---

[*]The Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

Aaron's condition did not meet or equal the listings was not supported by substantial evidence on the record as a whole. We affirm the judgment of the district court.

## I. Facts.

Aaron was born on February 8, 1996. He was removed from his mother's home when he was four, due to neglect. He now lives with Vivian Kelly, his aunt, who by all accounts does an admirable job of caring for him. He has a history of septic arthritis in his left knee, but that problem has been resolved and he does not contend that his knee is currently a severe impairment.

Aaron's remaining problem is that he suffers from developmental delays and Attention Deficit-Hyperactivity Disorder, which was diagnosed in May 2002, when he was six. He was prescribed medication, which helps but does not fully correct his problem. He was referred for testing for special education in 2001-02, when he was in kindergarten. For 2002-03, he was given special education services for 50 minutes each week, but kept in a regular first-grade classroom. He was kept back in second grade, so that he attended second grade in both 2003-04 and 2004-05.

Mrs. Kelly applied for SSI benefits for Aaron on September 30, 2002, alleging disability beginning January 15, 2000, due to juvenile arthritis, developmental delays in cognitive and fine motor skills, and academic deficits. He was examined on January 4, 2003 by Steven L. Goudy, M.D., a medical consultant, who opined that Aaron's medication helped control his hyperactivity, but that he would have to be followed in case he developed further problems with attention and cognitive function. The Kentucky Division of Disability Determinations obtained evaluations by Mary K. Thompson, Ph. D., and J. Howell, M.D., dated December 12, 2002 and April 15, 2003,

respectively, which concluded that Aaron's impairment was severe, but did not meet, medically equal, or functionally equal the listings. In particular, the agency evaluations stated that Aaron had a marked impairment of his ability to attend and complete tasks, but less than marked impairments or no impairment in other functional areas. The claim was initially denied on April 17, 2003.

Mrs. Kelly requested reconsideration on May 21, 2003, relying on the same disability alleged earlier. The agency obtained a review of the record by a new state physician and psychologist, who again concluded that Aaron's impairments were severe, but did not meet or equal the listings. Again, the state medical experts concluded that Aaron's ability to attend and complete tasks was markedly impaired, but the impairment of other functional areas was less than marked or there was no impairment. The claim was again denied on August 4, 2003.

On September 18, 2003, Mrs. Kelly requested a hearing before an ALJ. The hearing took place on October 22, 2004, when Aaron was eight and beginning his second year in second grade. At the hearing, Mrs. Kelly submitted two new teacher reports, and additional medical records from his treating physicians, which had not been in the record when the agency originally denied benefits. Mrs. Kelly testified as the only witness. After the hearing, the ALJ denied benefits. Applying the three-step inquiry appropriate for childhood disability cases, 20 C.F.R. § 416.924(a), he found (1) that Aaron had never engaged in gainful activity; (2) that Aaron's ADHD was a severe impairment; but (3) that it did not meet or equal the listings.

To determine whether Aaron's condition met or equaled the listings, the ALJ had to consider first, whether it met a listing, second, whether it was the medical equivalent of a listed condition, or

third, whether it was the functional equivalent of a listed condition. Mrs. Kelly does not contend that Aaron's condition met or equaled the listings or was the medical equivalent of a listed condition, so the only disputed issue is whether his condition was the functional equivalent of a listed condition. Functional equivalence is determined by 20 C.F.R. § 416.926a, which requires a "marked" impairment in two "domains" or an "extreme" impairment in one domain. § 416.926a. The ALJ found that the only domain in which Aaron had a marked impairment was "attending and completing tasks," § 416.926a(b)(1)(ii), and that his impairment in this domain was not "extreme." Accordingly, the ALJ concluded that Aaron was not disabled.

Mrs. Kelly appealed to the Appeals Council, contending that the ALJ violated Social Security Ruling 96-6p by failing to obtain an updated medical expert opinion in view of the new evidence presented at the hearing. She also submitted to the Appeals Council a new psychological evaluation dated Aug. 29, 2005. The psychologist's report mostly recounted information already in other records and gave new testing results showing that Aaron was a little behind grade level in math, but at about grade level in reading. The psychologist concluded, "[Aaron] would appear to meet the criteria for SSI at this time." The psychologist also completed an evaluation sheet showing Aaron had marked impairments in five out of six domains. Mrs. Kelly also submitted a new teacher's report, completed on May 18, 2005, after the ALJ's decision of November 19, 2004. The new teacher's report shows performance worse than the previous year's report on everything relating to attention span and responsibility. Mrs. Kelly does not rely on the psychologist's report or the new teacher's report in her brief, apparently because they were produced after the ALJ's decision.

Mrs. Kelly also contended there was no substantial evidence to support the ALJ's conclusion that Aaron was not disabled. The Appeals Council denied Mrs. Kelly's request for review.

Mrs. Kelly filed an action under 42 U.S.C. § 405(g). The case was referred to a Magistrate Judge, who considered Mrs. Kelly's arguments (1) that the ALJ erred in failing to call a medical expert to evaluate the new evidence Mrs. Kelly adduced, and (2) that the evidence demonstrated an extreme impairment in the "attending and completing tasks" domain and marked impairments in other domains. As to the medical expert issue, the Magistrate Judge reasoned that the new evidence did not "fatally undermine" the accuracy of the state agency assessment and therefore did not require a new medical expert's opinion. As to the sufficiency of the evidence, the Magistrate Judge held that the evidence did not show that Aaron had marked deficits in more than one domain. There was no such showing for "self-care" since a test showing him at the .4 percentile in April 2002 covered a broader range of concerns than "self-care" and therefore was not conclusive as to self-care. Other evidence about his difficulties in self-care was more properly characterized as relating to lack of attentiveness, in which he was admittedly markedly impaired, rather than as self-care. The record showed Aaron could feed, bathe, and clothe himself and use the toilet. Aaron was not shown to be markedly impaired in "acquiring and using information," since school authorities had decided to place him in a regular second grade classroom. Testing in 2002 showed his reading was at the 26th percentile, his math at the 31st, and his written language at the 33d percentile, which was not shown to be two standard deviations below the mean. The guidance counselor interpreting the results noted that Aaron was at one standard deviation below the mean. The Magistrate Judge did not find any

support for Mrs. Kelly's argument that Aaron was "extremely" impaired in attending and completing tasks.

The district court adopted the Magistrate Judge's Report and Recommendation.

On appeal, Mrs. Kelly contends that the ALJ erred by failing to obtain a medical expert to render an updated medical judgment and that there is not substantial evidence to support the ALJ's finding that Aaron was not disabled.

## II. Standard of review.

Under 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." Substantial evidence means "such relevant evidence as a reasonable mind might accept" to support a conclusion. *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We review the district court's decision in social security cases *de novo*, and we review the administrative findings and conclusions as if we were the first reviewing court. *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990).

## III. Need for updated medical expert opinion.

Social Security Ruling 96-6p governs the need for updated medical expert opinions. It requires an update when either (1) there is evidence of symptoms, signs and findings that suggest to the ALJ or Appeals Council that the applicant's condition may be equivalent to the listings; or (2) when additional medical evidence is received that "in the opinion of the administrative law judge

or the Appeals Council may change the State agency medical or psychological consultant's finding" that the impairment does not equal the listings.

Thus, Mrs. Kelly has to show that there is evidence calling for an updated medical opinion. Her new evidence consisted mainly of two teachers' reports. The two new teachers' reports are both from the second grade, which Aaron repeated, and are dated September 24, 2003 and October 20, 2004.

The new teachers' reports are not very different from the first-grade report dated November 13, 2002, which existed when the state agency experts rendered their opinions and which Mrs. Kelly does not argue was unavailable to those experts. The new reports agree with the old one that Aaron's worst area was "attending and completing tasks." In the first grade report section on attending and completing tasks, he had a "serious problem" ranking on seven out of thirteen items. One second grade report was slightly better, one slightly worse. In the 2003 second grade report, he had "a serious problem" ranking on four out of thirteen items in the attending and completing section. In the 2004 second grade report, he had five "extremely serious problem" rankings and five "serious problem" rankings, with only three items at "a slight problem." The new reports do not present a significantly different picture on attending and completing tasks than the 2002 report.

Mrs. Kelly argues that Aaron is markedly impaired in other domains, but the 2004 teacher's report does not support that assertion. Specifically, in the domain of caring for himself, eight of the rankings are either "no problem" or "slight problem." The only "extremely serious problem" ranking on that page is actually more related to the "attending and completing tasks" domain, since it

concerns "[b]eing patient when necessary." Moreover, the 2004 report ends with one of the most positive things in his file: the teacher wrote, "Aaron is a great kid, a happy kid! He means well, however, he has problems focusing." The 2003 report shows Aaron had begun receiving special education services daily, although he was still primarily in the regular classroom.

The ALJ specifically considered the 2003 and 2004 teachers' reports. Taking those into account, he found that the attending and completing tasks impairment was marked and all other impairments were less than marked. He did not specifically find that the new teachers' reports did not require an updated medical opinion, but it appears that Mrs. Kelly's counsel did not make that argument to the ALJ. In the transcript, Mrs. Kelly's counsel told the ALJ that "this recent teacher's report that we put in today . . . seems to indicate the same or . . . worse than the [previous] teacher's reports . . . . "

The Magistrate Judge considered the argument about updating the medical opinion and concluded there was no new evidence that made it necessary:

> There will always be a gap between the time the agency experts review the record and give their opinion with respect to the Listing and the time the hearing decision is issued. Absent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand. In this case, the evidence submitted after the state agency assessment does not fatally undermine the accuracy of that assessment.

Slip op. at 7.

Mrs. Kelly has not shown that the ALJ erred in failing to obtain an updated medical expert opinion.[1]

## IV. Substantial evidence review.

The legal framework for a childhood disability claim is a three-step inquiry prescribed in 20 C.F.R. § 416.924. The questions are (1) is the claimant working, (2) does the claimant have a severe, medically determinable impairment, and (3) does the impairment meet or equal the listings? The only step at issue is whether Aaron's impairment equals the listings. An impairment can equal the listings medically or functionally; Mrs. Kelly contends Aaron's impairment equals the listings functionally. The criteria for functional equivalence to a listing are set out in § 416.926a. That regulation divides function up into six "domains":

(1) Acquiring and using information;

(2) Attending and completing tasks;

(3) Interacting and relating with others;

(4) Moving about and manipulating objects;

(5) Caring for yourself; and

(6) Health and physical well-being.

---

[1]Mrs. Kelly also relies on *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048 (6th Cir. 1983), in arguing that the ALJ failed in his duty to develop the record. Lashley concerned an ALJ's duty in the case of a pro se claimant, *id*. at 1051, whereas Mrs. Kelly was represented by counsel at the hearing. Mrs. Kelly has made no showing that she was unable for any reason to present her case.

§ 416.926a(b)(1).  To establish a functional impairment equal to the listings, the claimant has to

show an extreme limitation in one domain or a marked impairment in more than one.  § 416.926a(d).

Lengthy definitions for marked and extreme are set out in § 416.926a(e).  Each includes instructions

on how to use test results:

> "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.

§ 416.926a(e)(2)(i).

> "Extreme" limitation is the rating we give to the worst limitations.  However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function.  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

§ 416.926a(e)(3)(i).

**(A) Whether substantial evidence supports ALJ's finding that impairment in attending and completing tasks is marked but not extreme.**

The regulation describing limitations in the attending and completing domain, §

416.926a(h)(3), gives a list of examples of limitations a person might have in this domain.  The

record shows that Aaron has many of those limitations, such as, "You repeatedly become side-

tracked from your activities or you frequently interrupt others," etc. *Id*.  Nevertheless, the regulation

cautions that just because a person has the limitations described does not mean the person has an

extreme or even a marked impairment. *Id*. ("Also, the examples do not necessarily describe a

10

'marked' or 'extreme' limitation.") Thus, the fact that Aaron's behaviors coincide with the examples in the regulations does not compel a result different from the ALJ's finding.

The strongest evidence supporting the ALJ's finding is that the state agency medical experts opined in their evaluations that Aaron's impairment in attending and completing was marked but not extreme. There was no medical evidence before the ALJ that contradicted the agency physicians' opinions, and even the psychologist's report that Mrs. Kelly introduced at the Appeals Council stage showed only a marked impairment in attending and completing tasks.

The ALJ relied on the teachers' reports in finding a marked limitation in the attending and completing domain, saying: "Despite prescribed medication for ADHD, he continues to have difficulty staying on task and must be redirected regularly. He requires one-on-one interaction with his teacher at times to complete assignments." The 2002 and 2003 teacher reports do not indicate that Aaron was in the "extreme" category for any items in this domain, and the 2004 report showed him in the extreme category for five out of thirteen items.

Mrs. Kelly relies on her own testimony at the hearing. She did indicate that Aaron had problems with attending and completing tasks and that she had to stay on him to get him to do his chores, but nothing in her testimony compels a finding that his impairment is extreme instead of marked.

Substantial evidence supports the ALJ's findings on this point.

**(B) Whether substantial evidence supports the ALJ's finding that none of Aaron's other impairments are marked.**

The ALJ concluded that Aaron's impairment in acquiring and using information is less than marked because he is generally functioning at grade level, albeit after he was held back a year. The state agency medical experts characterized Aaron's academic performance as low-average to average range and rated his impairment in this domain as less than marked. His guidance counselor reported that his achievement test scores placed him in the 26th percentile in reading, the 31st percentile in math, the 33rd percentile in written language, and the 23rd percentile overall. Mrs. Kelly argues that these tests should not be counted because the report did not include a full battery of tests; the counselor reported that Aaron was not able to complete all of the subparts. Even so, the guidance counselor concluded that he was in the low-average range of cognitive functioning, which she said was consistent with his academic achievement. The psychologist's report that Mrs. Kelly introduced at the Appeals Council stage indicated that Aaron had a marked impairment in the domain of acquiring and using information, but the individual test scores on which the psychologist relied were very close to his grade level in August when he was about to begin fourth grade, except for math, in which he was about a year behind. The ALJ's finding that Aaron's impairment in acquiring and using information is less than marked is supported by substantial evidence in the record as a whole.

The domain of self-care concerns "how well you maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." § 416.926a(k). Mrs. Kelly contends that Aaron was markedly limited in this domain, relying on the school guidance counselor's report after testing in

April 2002 that Aaron was in the .4 percentile on the Adaptive Behavior Assessment System ("ABAS") evaluation completed by his kindergarten teacher Kelli Creamer. The guidance counselor concluded that Aaron had deficits in self-help/adaptive behaviors of more than two standard deviations. This was before he began medication for ADHD in May 2002. The ALJ said this result should be taken with a grain of salt because Aaron "was often off task and results should be considered to be less than his best effort." This is consistent with the general caveat in the guidance counselor's assessment: "The results of the current assessments may need to be viewed with caution due to inattentive behaviors." Mrs. Kelly argues that it is "non-sensical" to apply this caveat to the ABAS because the ABAS was completed by the kindergarten teacher, not by Aaron. There is no citation in her brief supporting this assertion, and no further information about this test in the record. Therefore, it was not error for the ALJ to take the guidance counselor at her word and to discount the test results. The ALJ's reasoning distinguishes this case from *Slusser v. Apfel*, 85 F. Supp.2d 634, 637 (W. D. Va. 2000), in which the ALJ simply ignored the test results.

In her brief, Mrs. Kelly relies extensively on her own testimony that Aaron cannot care for himself because he does not do a good job of bathing himself, gets his right and left shoes mixed up, and dawdles when he is supposed to be doing chores. This seems to be a very small part of what the regulations mean by self-care, and there is countervailing evidence that he does feed himself, change clothes, and use the toilet without help.

The state agency medical experts found no limitation in the self-care domain. There is evidence in the rest of the record that Aaron is not impaired in "self care" in the sense of getting

emotional needs met, etc. For instance, the concluding remarks in his 2004 teacher's report, "Aaron is a great kid, a happy kid!" indicate that he is emotionally normal. The teachers' reports for 2003 and 2004 generally give him good marks in self care, with the notable exception of "being patient when necessary."

The regulations state that the ALJ does not have to give conclusive effect to any particular test score. 20 C.F.R. § 416.926a(e)(4)("[W]e will not rely on any test score alone. No single piece of information taken in isolation can establish whether you have a 'marked' or an 'extreme' limitation in a domain."). In this case it is clear that the ALJ considered the ABAS test result and gave a reason for qualifying his reliance on it. In view of all the other countervailing evidence, there is record support for his conclusion that Aaron was not markedly impaired in self care.

The ALJ found Aaron has an impairment in the domain of interacting and relation with others, but it is less than marked. This is the same as the state agency medical experts' opinions. They wrote, "Sometimes disruptive but generally relates well to peers and adults–plays with others, etc." His teachers' reports show he does have problems in controlling himself, but he otherwise has normal social relationships. One teacher noted, "Meds have helped." Everyone seems to agree that Aaron is a happy child, and his teachers seem to like him even though he requires extra attention from them. Nothing compels a different conclusion than the ALJ reached regarding this domain.

The ALJ's findings are a fair assessment of the evidence, and they are consistent with the only medical experts' opinions in the record before the ALJ. Aaron clearly has attention/ impulsivity problems. However, in light of the deference inherent in our standard of review, the ALJ's finding

that there was no functional equivalence to a listed condition is supportable.  The agency's denial of

SSI benefits should be affirmed.

***

We AFFIRM the judgment of the district court.