NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0478n.06

No. 10-6119

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*May 07, 2012*

LEONARD GREEN, Clerk

TINA KAY COURTER,

      Plaintiff-Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant-Appellee.

_____/

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

BEFORE:    CLAY and GIBBONS, Circuit Judges; KORMAN, District Judge.[*]

**CLAY, Circuit Judge.**  Claimant Tina Kay Courter appeals an order of the district court granting summary judgment to the Commissioner of the Social Security Administration and upholding the denial of Claimant's applications for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–433, and for supplemental security income under Title XVI, 42 U.S.C. §§ 1381–1383f, on the basis of her alleged mental disability. For the reasons that follow, we **AFFIRM**.

## BACKGROUND

On May 23, 2006, Claimant filed applications with the Social Security Administration for disability benefits and supplemental security income under Titles II and XVI of the Social Security

_____

[*]The Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

Act. Claimant, over forty years old at the time of her applications, claimed to suffer from an unspecified "disabling condition" on July 15, 2000 that entitled her to benefits.[1] Claimant eventually attested that her disability was both mental and physical.[2] Claimant's applications were denied after the Commissioner's initial review and upon reconsideration. Claimant requested a hearing and was referred to an ALJ.

On September 16, 2008, the ALJ heard argument in support of Claimant's applications and testimony from Claimant and a vocational expert. Evidence was presented on her educational background, work experience, current home life, and physical and mental condition.

Claimant completed secondary education through sixth grade, leaving school at the age of fourteen. She ended her education early with her mother's permission. Claimant held employment continuously from 1986 until 2001. Her jobs included food preparation, candle packaging, and cleaning services for about ten different companies across three states. Claimant's position as a food preparer involved cutting slices of pie and meat, making sandwiches, and clearing customers' trays. She was also a housekeeper and cleaner for a boat and as part of a larger cleaning service. Her work on the boat involved cleaning between the boat's machines and mopping the deck. Her work as a

---

[1] Claimant's disability application in the present case alleged an onset date of disability of July 15, 2000, even though she had filed prior applications for disability benefits, which were denied on May 17, 2002 and March 26, 2005. However, the administrative law judge (ALJ) decided to reopen the earlier applications and considered Claimant's disability beginning July 15, 2000.

[2] Although Claimant does not appeal the ALJ's decision denying her applications on the basis of her alleged physical disability, we note that the majority of evidence in the record related to Claimant's physical ailments, primarily, her "back pain." Experts determined that Claimant suffers from spondylolisthesis, degenerative disc disease, degenerative joint disease in the right knee, status post right knee meniscectomy and synovectomy, chronic obstructive pulmonary disease, and obesity.

housekeeper included cleaning in hotels, apartments, restaurants, and other public areas and performing tasks such as vacuuming, mopping, and making beds. As a candle packager, Claimant placed labels on candles, handled candle wax, and packaged potpourri. Claimant's jobs required work periods of eight hours per day, five days per week. In 2001, she permanently stopped working due to pain in her back.

At the time of the hearing, Claimant lived with her father, who provided for her financially. Claimant testified that, on a typical day, she would clean her father's apartment (sweeping the floor and wiping the countertops) and watch television for six to seven hours. Claimant cooks for herself, does her dishes, and takes her laundry to a laundromat. She goes shopping several times a month. She once had a drivers license, but she let it expire due to an inability to afford gas or automobile insurance. She stated that she did not feel "functional" because of her inability to work due to her back pain.

In response to questions regarding her mental state, Claimant denied having anxieties, although she prefers to avoid big crowds. She denied having suicidal thoughts or engaging in crying episodes. Claimant stated that her cognitive functioning "keeps me down to certain jobs. Basically like housekeeping and kitchen work I've done." The ALJ asked Claimant if she was capable of performing her past work as a cleaner and prep cook if she did not suffer from back pain, and Claimant agreed that she could.

In addition to Claimant's testimony, the ALJ was presented with several expert evaluations of Claimant's mental capabilities. The first was an evaluation by Dr. Nancy Schmidtgoessling, who conducted a one-time consultative examination of Claimant. Dr. Schmidtgoessling suggested that

Claimant was of "low-borderline intellect." She tested Claimant on the Wechsler Adult Intelligence Scale (WAIS) III and found her to have a full scale IQ score of 59, verbal IQ of 61, and performance IQ of 65. Dr. Schmidtgoessling opined that this placed Claimant in the mild range of mental retardation. Claimant's Wechsler Memory Scale (WMS) III scores ranged from mildly mentally retarded to borderline. Her Vineland Adaptive Behavior Scales (ABS) scores were in the mild and low-average range of mental retardation. Dr. Schmidtgoessling noted that Claimant's responses during the examination were "logical, relevant, and coherent, and [Claimant] did not appear disorganized or confused." The doctor concluded that Claimant is able to understand one- and two-step directions, that her memory, concentration, and ability to handle stress was moderately impaired, and that her ability to relate to others was mildly impaired. The doctor also found that "[t]here are no IQ scores, adaptive scores, or academic scores from the claimant's developmental years, and therefore a diagnosis of Mental Retardation can not be made." Dr. Schmidtgoessling ultimately diagnosed Claimant with a depressive disorder and a learning disorder.

Dr. Steven Meyer, a state agency reviewing psychologist, reviewed Claimant's file and submitted a second opinion. He determined that Claimant had depression, anxiety, and "BIF" (borderline intellectual functioning) but that she was not mentally retarded and did not satisfy the regulatory requirements for mental disability. He felt that the IQ scores from the tests administered by Dr. Schmidtgoessling were an underestimate of Claimant's cognitive abilities, even if the scores were deemed valid. Dr. Meyer completed a Residual Functional Capacity Assessment and concluded that Claimant had no limitation or insignificant limitation in most categories, but moderate limitation in a few categories; he did not believe that Plaintiff was "markedly limited" in

any category. Dr. Meyer also noted that his assessment was consistent with the findings in Claimant's prior disability application denials and "recent field observations" of Claimant.

Dr. David Dietz provided a third opinion of Claimant's mental functioning. Dr. Dietz reviewed both Dr. Meyer's opinion and Claimant's file. He affirmed Dr. Meyer's assessment that Claimant was not mentally retarded and noted that "[t]here continue to be significant concerns regarding the credibility of [Claimant's] allegations."

Claimant also provided the ALJ with her school records from the years 1979 and 1980. Claimant submitted the school records after Drs. Schmidtgoessling, Meyer, and Dietz had prepared their reports, so the information contained in the records was not reflected in the doctors' history intakes or analysis. The school records showed that Claimant was placed in special education and referred to a county attendance officer in 1979. Claimant had an absenteeism problem and was repeating the sixth grade, though she was the age of a high school freshman. The records provided her full IQ score of 76, with a verbal score at 80 and a performance score at 75. Claimant's reading skills were adequate for her grade level, but her math and spelling skills were at the third grade level. The school records also included an assessment by school psychologist Don Hanon, which provided: "[T]here is some question as to how much of a true 'slow learner' [Claimant] is, as the combination of an unsettled home environment and poor attendance would not be conducive to helping [her] perform as well as she might if these inhibiting factors were not present." Hanon explicitly blamed the low math and spelling skills on Claimant's absenteeism, noting that certain subjects that are taught sequentially require attendance so that a student can learn the basics and build upon those foundations. He did not diagnose mental retardation.

5

Finally, vocational expert Micha Daoud testified. Daoud reviewed the record of evidence and listened to Claimant's testimony. Daoud felt that Claimant would be unable to perform some of her past work due to her physical limitations, though she could perform some of the work as she actually performed it in the past, both physically and mentally. Daoud testified in response to a hypothetical that if an individual suffered from severe mental impairments and could not sustain concentration, persistence or pace, or do simple, routine tasks on a regular and continuing basis for a normal work week, that individual would be mentally unable to perform Claimant's past relevant work. However, even if Claimant was unable to continue her past work due to physical limitations, Daoud concluded that other sedentary vocations remained open to Claimant, such as ticket counter, surveillance system monitor, unskilled packager, and ampoule packager.

After the hearing, the ALJ issued its decision affirming the Commissioner's denial of Claimant's applications on the basis that she did not qualify as disabled under the Social Security Act. The ALJ found that Claimant had not engaged in substantial gainful activity since the onset of her alleged disability, July 15, 2000.[3] He also found that Claimant had severe mental impairments of "depression, anxiety, and a learning disorder not otherwise specified." However, he determined that Claimant's mental impairments did not meet or medically equal one of the listed impairments in the social security regulations. The ALJ decided that while Claimant had mild to moderate intellectual difficulties, she had no marked difficulties or repeated episodes of decompensation as is required for a finding of mental disability. He noted that although her IQ score of 59 fell within

---

[3]Claimant was employed through part of 2001, but the Commissioner does not appeal the ALJ's determination of Claimant's onset date.

the mild mental retardation range, she was still capable of one- and two-step job instructions. He also found that the IQ score was an underestimate of Claimant's abilities, especially in light of her extensive work history and activities of daily living. Finally, the ALJ considered Claimant's school records and noted her prior, higher IQ score and the school psychologist's evaluation. He concluded: "Given the lack of a formal diagnosis of mental retardation, [Claimant's] prior IQ score of 76, and academic deficits not solidly tied to mental ability, it cannot be found that the claimant meets the criteria for disability under listing 12.05."

The ALJ also determined that Claimant had the residual functional capacity to mentally perform light work, subject to certain physical restrictions, which included her past relevant work as a cleaner or prep cook. Finally, the ALJ determined that Claimant could successfully adjust to other work, considering her residual functional capacity, age, education, and work experience. Claimant appealed the ALJ's decision to the Appeals Council, which affirmed on the basis of the ALJ's decision. Claimant then filed the present action.

At the district court, Claimant submitted the record of evidence from her administrative hearing and two new pieces of evidence—two evaluations of her mental capabilities. Both opinions were solicited and obtained by Claimant's counsel one year after the ALJ issued his decision.

The first evaluation was an opinion from Dr. Linda Hartmann, who reviewed Dr. Schmidtgoessling's assessment and Claimant's school records. Dr. Hartmann believed that Claimant "is best evaluated under listing 12.05 C, mental retardation." Dr. Hartmann noted that the "school records support early evidence of delayed development" and that Claimant's full scale IQ score of

7

59 (as determined by the IQ test administered by Dr. Schmidtgoessling) "actually is even below the range necessary for 12.05 C."

The second evaluation was provided by licensed psychological practitioner Reba Moore. Moore examined Claimant and conducted a new WAIS-III test, among others. On the WAIS-III, Claimant received an overall IQ score of 67, with a verbal score of 67 and a performance score of 74. These scores were much higher than the scores Claimant received on the tests administered by Dr. Schmidtgoessling. Nonetheless, Moore found that Claimant fell within the mild mental retardation range based on the new scores. Moore's ultimate "diagnostic impression" was of chronic depression and mild mental retardation.

Claimant and the Commissioner filed cross-motions for summary judgment. Claimant also moved to remand the adjudication of her applications to the ALJ in light of the two new evaluations. The district court reviewed the ALJ's decision and held that it was supported by substantial evidence. The district court further rejected Claimant's argument that her IQ scores qualified her as mentally retarded because they were in the range provided by Section 12.05. Finally, the district court assessed the new evaluations presented by Claimant. It determined that, despite the fact that the opinions were compiled after the ALJ's decision, Claimant could not show good cause as to why she did not seek out and admit the evidence at the administrative hearing. The district court granted summary judgment to the Commissioner and denied Claimant's motions to remand.

Claimant timely appealed and raised three issues for our review: First, whether the ALJ's finding that Claimant was not mentally disabled was supported by substantial evidence.[4] Second,

_____

[4]Claimant does not appeal the denial of her application for physical disability benefits.

whether the ALJ violated Social Security Ruling 96-6p in failing to seek updated expert analysis following the admission of Claimant's school records. Third, whether the district court erred in denying Claimant's motion to remand on the basis of her admission of the two new psychological evaluations. We address each issue, in turn.

**DISCUSSION**

**I.     Motion for Summary Judgment**

"The district court's determination that substantial evidence supports the ALJ's decision is a legal conclusion that we review *de novo*." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 750 (6th Cir. 2011); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). In reviewing an ALJ's decision to deny benefits, we must affirm "absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see* 42 U.S.C. § 405(g). "Substantial evidence" constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks omitted). It is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 521 (6th Cir. 2008) (internal quotation marks and citation omitted). We examine the administrative record as a whole and consider all material facts. *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 695 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), and *Walker v. Sec'y of Health & Hum. Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992)). However, even if the ALJ's decision is supported by substantial evidence, we remand where the ALJ

"fail[ed] to follow its own regulations and where that error prejudice[d] a claimant on the merits or deprive[d] the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004)). Thus, we may remand the case to the ALJ if its decision was not supported by substantial evidence or its decision was contrary to law or administrative policy. *See* 42 U.S.C. § 405(g) (sentence four).

## A.     The ALJ's Findings Were Supported By Substantial Evidence

Under the Social Security Act, a claimant is entitled to disability benefits if she can show her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 416.905. Corresponding regulations outline a five-step sequential process to determine whether an individual qualifies as disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. That process provides:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.

*Wilson*, 378 F.3d at 548 (internal citations omitted); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[5]  We thus consider whether the ALJ's decision at each step was supported by substantial evidence.

Under step one, the ALJ found that Claimant had not engaged in substantial gainful activity during the relevant time period, July 15, 2000 through December 31, 2005, and therefore that Claimant met her burden under step one.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  Under step two, the ALJ determined that Claimant suffers from severe, medically determinable mental impairments of depression, anxiety, and a learning disorder not otherwise specified.[6]  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Because the parties do not appeal the ALJ's decisions at steps one and two of the analysis, we need not review those issues. Instead, we turn to Claimant's argument that the ALJ's decision at step three was not supported by substantial evidence.  We also consider the ALJ's decision to deny benefits at steps four and five.

**1.    Step Three: Whether the Impairment Qualifies Under Section 12.05**

Under step three, a claimant must show that her severe impairments qualify under the listings in Section 12.05 of the appendix to subpart P of 20 C.F.R. § 404 (hereinafter "Section 12.05").  *See*

---

[5]A claimant is entitled to disability benefits only if she meets the insured status requirements and can show disability on or before the date that the insured status expired.  *See* 20 C.F.R. § 404.131.  It is uncontradicted that Claimant was insured through December 31, 2005.

[6]A "mental impairment" is defined as "an impairment that results from . . . psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. § 423(d)(3); 20 C.F.R. §§ 404.1508, 416.908 (requiring that the abnormalities be proven with evidence of "signs, symptoms, and laboratory findings").

20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant can make that showing, she is presumed disabled. *Wilson*, 378 F.3d at 548. Section 12.05 provides:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A.     Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; or
>
> B.     A valid verbal, performance, or full scale IQ of 59 or less; or
>
> C.     A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function; or
>
> D.     A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2 Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. pt. 404, subpt. P, App. 1, § 12.05. "In other words, to demonstrate mental retardation, a claimant must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations," in addition to qualifying under one of the four sets of criteria under Section 12.05. *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009). Even if a claimant's impairments are severe, each of these criteria must be proved in order for the claimant to qualify for disability benefits. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Claimant asserts that she qualifies as mentally retarded under Section 12.05B, 12.05C, or 12.05D. She argues that the ALJ erred in finding that her impairments did not qualify under these listings, because (1) the ALJ's decision was not supported by substantial evidence, and (2) the ALJ overstepped his authority in interpreting her school record.

The following evidence was before the ALJ and supported his finding that Claimant did not qualify as mentally retarded under Section 12.05: Claimant was able to care for herself and her father's apartment, including cooking, cleaning, shopping, keeping track of her medical appointments, and maintaining personal hygiene. She had extensive prior work history as a cleaner and prep cook for several different companies, and she explicitly testified at her hearing that she was mentally capable of continuing that work. Dr. Schmidtgoessling examined Claimant and found that she had mild mental retardation, but that she was capable of performing one- and two-step instructions. Dr. Meyer found that Claimant's IQ score of 59 underestimated her capabilities. Dr. Dietz acknowledged credibility issues. None of the experts diagnosed Claimant with mental retardation, and they opined that she did not qualify as mentally retarded under Section 12.05. Furthermore, none of the experts found "marked" restrictions or difficulties, instead finding only "moderate" or "mild" limitations. Finally, Claimant's school records noted a prior, higher IQ score of 76, and school psychologist Hanon commented that Claimant's poor academic performance was not due to the fact that Claimant was a "slow learner" but rather due to Claimant's rough home life and failure to attend classes.

We believe that this evidence was certainly substantial in that a reasonable mind would accept it as adequate to support a finding that Claimant was not mentally retarded under Section

13

12.05B, 12.05C, or 12.05D. *See Lindsley*, 560 F.3d at 604. Although there was some competing evidence indicating mental limitations, such as Claimant's qualifying IQ score of 59, the ALJ explicitly agreed with the experts that this score was an underestimate and noted her prior IQ score of 76. We defer to the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)) (internal quotation marks omitted). Moreover, the mere fact of a qualifying IQ score does not require that the ALJ find mental retardation under Section 12.05B when substantial evidence supports the contrary conclusion or the claimant's allegations of her capabilities are deemed not credible. *See Cruse*, 502 F.3d at 542–43. Similarly, there was little support for finding an "impairment imposing an additional and significant work-related limitation of function" or "marked" restrictions or repeated episodes of decompensation required under Section 12.05C and 12.05D, especially in light of Claimant's own testimony that she was mentally capable of doing her past work.

In response to Claimant's allegation that the ALJ improperly overstepped his authority in interpreting the school records, we note that the ALJ is actually *required* to analyze the non-medical evidence presented to him and to decide whether that evidence qualifies the claimant as disabled. "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence . . . ." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). The ALJ must review the evidence, including school records, to make the ultimate decision as to whether that evidence proves or undermines an individual's claim of mental disability. 20 C.F.R.

§§ 404.1527(c)–(d), 416.927(c)–(d). This is so because the ALJ is "responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Thus, the "final responsibility for deciding" whether a claimant's impairments are severe and "meet[] or equal[] the requirements . . . in the Listing of Impairments" lies with the agency. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). By considering the school records and fulfilling his duties under the regulations, the ALJ did not overstep his authority.

### 2. Steps Four and Five: Residual Functional Capacity and Adjustment to Other Work

Although the ALJ found that Claimant's impairments did not qualify her as mentally retarded under step three, the ALJ continued with the analysis and found that Claimant had the residual functional capacity to perform her past relevant work under step four and could be adjusted to other work under step five. *See* 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). While the parties do not address the ALJ's determinations at steps four and five, we note our belief that the ALJ's decision was supported with substantial evidence with respect to these steps as well.

Even if a claimant has shown that she is presumed disabled under step three, she will not qualify for disability benefits if she has the residual functional capacity to perform her past relevant work under step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the ALJ must engage in a two-part analysis. First, the ALJ must determine whether there is a medically determinable mental impairment that could reasonably be expected to produce the claimant's alleged pain and symptoms. *See Duncan v. Sec'y of Health & Hum. Servs*., 801 F.2d 847, 853 (6th Cir. 1986); *Brown v. Bowen*, No. 86-6015, 1987 U.S. App. LEXIS 16897, at *13–14 (6th Cir. Dec. 30, 1987). Second, the ALJ must consider whether the alleged intensity, persistence, and limiting effects

of the symptoms actually limit the claimant's ability to do work—which requires a credibility finding. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

The ALJ ruled that the severe impairments found at step two were likely to produce Claimant's symptoms, but that Claimant was not credible because her alleged mental inabilities were inconsistent with her ability to follow instructions and perform her past employment. This determination was supported by Claimant's explicit admission that she was still mentally capable of performing her past relevant work and that her back pain was the only issue preventing her from returning to that work. Furthermore, the experts agreed that Claimant was mentally capable of continuing her past relevant work. This evidence was substantial and supported the ALJ's finding with respect to step four.

Finally, under step five, the ALJ must determine whether a claimant can be adjusted to any other work. 42 U.S.C. § 423(d)(2)(A); *Poe*, 342 F. App'x at 155; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). "The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *Foster*, 279 F.3d at 354.

The ALJ agreed that Claimant could perform other work. This determination was supported by Daoud's testimony that Claimant could mentally and physically perform jobs such as a ticket counter, surveillance system monitor, unskilled packager, and ampoule packager. The other experts opined that Claimant could handle one- and two-step job instructions and thus was suited for a variety of positions. The evidence supported the ALJ's determination that Claimant was not entitled to disability benefits at step five.

In conclusion, we hold that the ALJ's decision that Claimant was not mentally retarded and thus was not entitled to disability benefits and supplemental security income was supported by substantial evidence. The district court did not err in awarding summary judgment to the Commissioner on this matter.

**B.      The ALJ's Decision Was Not Contrary To Social Security Ruling 96-6p**

Claimant next argues that the ALJ's failure to seek updated expert analysis following the presentation of her school record was contrary to Social Security Administration policy, Social Security Ruling (SSR) 96-6p. SSR 96-6p provides, in relevant part:

> [A]n administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:
>
> [1.] When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> [2.] When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p (internal footnote omitted).

SSR 96-6p thus "requires that the ALJ obtain an updated medical opinion *only* when the ALJ believes that the evidence could change a consultant's finding that the impairment is not equivalent to a listed impairment." *Burbo v. Comm'r of Soc. Sec.*, No. 10-2016, 2011 U.S. App. LEXIS 26143, at *6–7 (6th Cir. Sept. 21, 2011). More specifically, the ruling "requires an update when either (1) there is evidence of symptoms, signs[,] and findings that suggest to the ALJ or Appeals Council that the applicant's condition may be equivalent to [Section 12.05]; or (2) when additional medical

evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment does not equal the listings [in Section 12.05]." *Kelly ex rel. Hollowell v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 830 (6th Cir. 2009) (internal quotation marks omitted). Claimant thus must demonstrate either that the school records suggest that she qualified as mentally retarded under Section 12.05 or that the ALJ believed the school records may have changed the experts' findings.

First, under clause one of SSR 96-6p as provided above, the school records alone do not establish that Claimant qualifies as mentally retarded. Her IQ scores as a student—a full IQ score of 76, with a verbal score of 80 and a performance score of 75—were greater than the ranges that qualify for mental disability (at least under 70). Hanon believed that Claimant's poor school performance was due to non-intellectual, outside factors. He noted: "[T]here is some question as to how much of a true 'slow learner' [Claimant] is, as the combination of an unsettled home environment and poor attendance would not be conducive to helping [her] perform as well as she might if these inhibiting factors were not present." This evidence does not support a finding that Claimant is mentally retarded, but undermines it. In similar cases, we have found that "school records do not necessarily show that [a claimant] had intellectual deficiencies" where, "[i]nstead, the records support the conclusion that [the claimant] had poor school attendance and a troubled home life." *Hayes*, 357 F. App'x at 676. Thus, the ALJ did not violate SSR 96-6p in finding that the school records did not suggest that Claimant qualified under Section 12.05 as mentally retarded.

The ALJ did not explicitly rule on whether an updated expert opinion was required following the admission of the school records, because Claimant did not request an updated medical opinion

or argue that SSR 96-6p was violated until her appeal of the ALJ's decision to the Appeals Council. However, the ALJ did review the school records and explicitly concluded that they did not support Claimant's argument that she met or equaled Section 12.05. The ALJ also noted in his opinion that he considered all of the evidence in accordance with SSR 96-6p.

Claimant argues that the ALJ overstepped his authority when he "ma[de] the assumption that a psychologist would not make the diagnosis of 'mental retardation'" in light of the school records. Claimant's argument is unpersuasive, because the regulations actually require the ALJ to make that decision, namely, whether the new evidence would "change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p; *see Burbo*, 2011 U.S. App. LEXIS 26143, at \*6–7; *Kelly*, 314 F. App'x at 830. Although the ALJ did not explicitly hold that an updated medical opinion was unnecessary, in light of his determination that the school records did not save Claimant's claim, he implicitly decided that the records would not change the opinions of the experts. We therefore find that the ALJ did not violate SSR 96-6p in deciding not to request updated evaluations.

## II.     Motion to Remand In Light of New Expert Evaluations

During the district court proceedings, Claimant moved to remand under sentence six of 42 U.S.C. § 405(g). In our circuit, it is unclear whether a district court's denial of a motion to remand based on sentence six of § 405(g) is reviewed *de novo* or for abuse of discretion. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010); *Templeton v. Comm'r of Soc. Sec.*, 215 F. App'x 458, 464 n.3 (6th Cir. 2007); *Cranfield v. Comm'r of Soc. Sec.*, 79 F. App'x 852, 857 (6th Cir.

2003). *But see Perkins v. Apfel*, 14 F. App'x 593, 600 (6th Cir. 2001) (analyzing the issue under an abuse of discretion standard without giving reasons for doing so).[7] However, because we find that Claimant's motion fails under either standard, it is unnecessary for us to determine at this time which standard of review applies.

Sentence six of § 405(g) addresses situations where a Claimant submits new evidence that was not presented to the ALJ but would alter the ALJ's ultimate decision. Sentence six of § 405(g) provides, in relevant part:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both . . . .

42 U.S.C. § 405(g). "[E]vidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster*, 279 F.3d at 357 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is "material" if it "would likely change the Commissioner's decision." *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007); *see Sizemore v. Sec'y Health & Hum. Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). In order to prove "good cause," a

---

[7]Some circuits have decided this issue, whereas others remain uncertain. *See, e.g.*, *Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 747 n.6 (3d Cir. 2009) (declining to choose a standard given that the claimant failed under any applicable standard); *Tower v. Barnhart*, 89 F. App'x 186, 188 (10th Cir. 2004) (applying *de novo* review); *Harman v. Apfel*, 211 F.3d 1172, 1176 n.5 (9th Cir. 2000) (refusing to decide the standard of review and stating: "Unfortunately, different panels of this Court have come down on opposite sides of the *de novo* versus abuse of discretion debate with regard to sentence-six remands and it is improper for us to rely upon either position until the split is resolved *en banc*.").

Claimant must "demonstrat[e] a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357; *Willis v. Sec'y Health & Hum. Servs.*, 727 F.2d 551, 554 (1984) (per curiam). This includes detailing the obstacles that prevented the admission of the evidence. *Bass*, 499 F.3d at 513. The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the "good cause" requirement. This Court takes "a harder line on the good cause test" with respect to timing and thus requires that the claimant "give a valid reason for his failure to obtain evidence prior to the hearing." *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). When we grant a sentence-six motion, we neither affirm nor reverse the ALJ's decision, but simply remand for further fact-finding. *Melkonyan*, 501 U.S. at 98.

Claimant asserts that Dr. Hartmann's opinion and Ms. Moore's assessment are new, material evidence that would impact the ALJ's decision, thus requiring remand under sentence six. Dr. Hartmann's and Ms. Moore's evaluations were not in existence when ALJ issued its decision in October 2008, because Claimant's counsel did not solicit them until February 2010 and January 2010, respectively. However, timing alone does not satisfy the "good cause" requirement. *Oliver*, 804 F.2d at 966. Claimant's sole reason for failing to obtain this evidence in time to present it to the ALJ is that she could not "anticipate that the Commissioner [would] violate his own Social Security Ruling 96-6p." Presumably, Claimant is arguing that she could not anticipate that the ALJ would find that she did not qualify as mentally disabled and therefore that she would need to bolster her case with additional evidence. Claimant's argument is frivolous and fails to provide a reasoned explanation for or detail the obstacles that hindered her from seeking the evaluations sooner. *See*

21

*Bass*, 499 F.3d at 513; *Oliver*, 804 F.2d at 966. A party should always anticipate that a decision maker might rule against it. A belief that one would not "lose" given the evidence admitted cannot meet the "good cause" standard for failing to obtain or submit all useful evidence in the first instance. Because Claimant cannot show good cause for her failure to obtain the opinions of Dr. Hartmann and Ms. Moore prior to the ALJ's decision, Claimant is not entitled to remand under sentence six of § 405(g).

Claimant's request for remand under sentence six may also fail because the new evidence is not "material" in that both Dr. Hartmann and Ms. Moore found that Claimant was "mildly mentally retarded," which was consistent with the prior experts' findings. Moreover, the IQ test administered by Moore yielded an overall IQ of 67, much higher than her score of 59 from the IQ test administered by Dr. Schmidtgoessling and presented to the ALJ. Thus, Moore's report may actually undermine Claimant's claim of materiality. Regardless, because there was clearly no "good cause" for Claimant's failure to obtain these two evaluations prior to the ALJ's decision, Claimant is not entitled to a sentence six remand.

## CONCLUSION

For the reasons discussed above, this Court **AFFIRMS** the district court's order granting summary judgment to the Commissioner and denying Claimant's motion to remand.